SPICER ET AL. *v.* GORE

[No. 185, September Term, 1958.]

*Decided April 14, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and PRESCOTT, JJ.

*Charles A. Thompson,* with whom were *Charles E. Edmondson* and *Harrington & Thompson* on the brief, for appellants.

*Frederick P. McBriety,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appeal is by Jarrett, the defendant below, from a judgment for Gore, the plaintiff in an action for trespass *q. c. f.* Jarrett and Gore each have large wooded acreage in Dorchester County and intermittently over the years have contested ownership of various tracts, as *Gore v. Jarrett,* 192 Md. 513 (the winner, Jarrett), and *Gore v. Hall,* 206 Md. 485 (the winner, Gore), demonstrate.

The land presently in dispute is some eighty-three acres in the Taylor's Island Election District of Dorchester County, about a mile from Blackwater Bridge. Its outlines and relative location proved hard to delineate on the ground, from the title records, and in the trial below, and the determination of its ownership was a matter not free from difficulty, as the lower court noted. Much of this difficulty came from the fact that conveyances generally were not by metes and bounds but by reference to the name by which the land was known, and the names of various parcels seem to have changed frequently over the long period of years the testimony covered.

The land in dispute is the northeasternmost several acres of a parcel of land referred to as "South West End"—the coined name given by Simmons, the county surveyor employed by Jarrett about 1940 to make a survey of a synthetic tract for use in an application to the Commissioner of the Land Office of Maryland for a patent. South West End comprises all or part of various patented tracts, including John's Delight, Shenton's Delight, Hazard, Newtown, and Addition to Newtown, as well as a piece of land not patented, called "Marg's Lot." The northern line of South West End adjoins the southern line of Gum Swamp, also known as

Tubman's Ware, and the disputed area is just to the south of this line.

Gore caveated Jarrett's application for a patent for South West End and the case was tried before the Commissioner in 1944. The decision was that no patent could issue because the caveator had substantiated his claim to the disputed area. Jarrett neither appealed nor sought a new application, and the matter rested until 1955, when Gore, reserving the fee, sold the standing timber to the Bounds Package Corporation. While Bounds was cutting the timber, Jarrett ordered its agents from the property and proceeded to have his own agent cut almost four hundred trees from the land. Thereupon, Gore filed the present suit.

Both Gore and Jarrett claim record title from Alvin Linthicum and Samuel Woolford, prior joint owners. Gore's claim is that all the land now referred to as South West End was acquired in 1889 by Edward Gore from the trustees to make sale of the real estate of Levin Thomas Dunnock, deceased, and that in 1890 Edward Gore's will passed the land to his son Matthew Gore (brother of Oliver Gore, the appellee) who, as soon as he could, mortgaged it. The mortgage was foreclosed and in 1895 the purchaser at foreclosure deeded the land to Alvin Linthicum and Samuel Woolford. In this chain of title the description of the property involved is uniformly those parcels of land about one mile from Blackwater Bridge, known by the names of "Cow Range" and "New Fair" (sometimes with the addition of "by whatever names the same may be known" or "etc."). In 1921 the personal representatives of Alvin Linthicum, pursuant to order of the Orphans' Court and the power of sale in his will, and Samuel Woolford and his wife, deeded back to Matthew Gore "all that farm or tract of land known by the name of "Cow Range" and "New Fair". In 1939 Matthew Gore deeded to his brother Oliver, the appellee, the land he had inherited from their father and bought back in 1921, describing it as it had been described in the deed to him from Alvin Linthicum's personal representatives and the Woolfords.

Jarrett's claim to record title is based on three deeds: The first, executed in 1930 (but not recorded until 1938)

from the heirs-at-law of Samuel W. Woolford to Samuel W. Linthicum, described the land conveyed as being "the same tract of land which was purchased by Alvin Linthicum and Samuel Woolford from John S. Nettleton, *et ux.* and John L. Vetra." The second, dated September, 1938, was from Samuel W. Linthicum and wife, conveying the one-half undivided interest which was "conveyed to the said Samuel W. Linthicum by the heirs of Samuel Woolford" by the 1930 deed. The third, dated April, 1938, was from the trustees of the Alvin Linthicum estate, conveying a one-half undivided interest in the land "purchased many years ago by W. Alvin Linthicum and Samuel W. Woolford from John S. Nettleton and wife and John L. Vetra," describing it by metes and bounds. In the deed from the trustees, it is set forth that "There is no deed of record conveying said land and property to the said W. Alvin Linthicum and Samuel W. Woolford from the said John S. Nettleton and wife and John L. Vetra, and the grantee named in the deed, the said J. William Jarrett so understands in the acceptance of this deed by him." The appellant admits there is no such deed.

It seems apparent that Jarrett has no valid paper title to the land in dispute, but this is not decisive because Gore, as the plaintiff in the action for trespass *q. c. f.,* can prevail only on the strength of his own good record or possessory title. *Giles v. diRobbio,* 186 Md. 258, 269, and cases cited.

The trial court, who heard the case without a jury, did not take the findings of fact of the Commissioner of the Land Office as conclusively binding, although in his opinion he quoted from them extensively and found them persuasive.

There was flat uncontradicted testimony by the official surveyor who executed the warrant of resurvey that the Simmons plat, which was before the Commissioner of the Land Office, and the plat prepared by him delineate the same area of land, and that the acres in dispute were within the outlines of South West End which Jarrett sought to patent. The Commissioner, in deciding the case before him in 1944, said: "The whole question in this case hinges on location" and that he found that South West End got its name as being the southwest end of Tubman's Ware," which in turn was

a resurvey of a number of older tracts, particularly one called "Inclosure," which was contiguous to "Addition to Newtown." He further said: "It appears clearly from the testimony that the assumed names of 'New Fair' and 'Cow Range' were really referring to 'New Town' or 'Addition to New Town,' over which the Gore family exercised possession for a good many years." He sums up his earlier conclusion that the area synthetically created as a tract called "South West End" and claimed then, as it is now, by both Gore and Jarrett, ran west and south from "Tubman's Ware" (Gum Swamp) and was all owned by Gore, by saying: "* * * the caveator has sufficiently substantiated his claim to the disputed area."

It is widely held that determinations of fact by a Land Office or Commissioner will be deemed binding on the parties by a court in subsequent proceedings other than direct appeals. In a contested case, a Commissioner's action is judicial or quasi-judicial, arrived at after hearing and considering testimony, and his findings of fact generally are held to have the weight of those of any other judicial trier of fact. 50 C. J. S., *Judgments,* Sec. 690; 73 C. J. S., *Public Lands,* Sec. 179 d; Annot., 1918 D L. R. A. 597, 616, *et seq.* See, for example, *Vance v. Burbank,* 101 U. S. 514, 25 L. Ed. 929, where the Supreme Court pointed out that the dispute was one of fact, that is, whether Scott, the applicant for a patent had resided on and cultivated the land in dispute for four consecutive years, and said: "This was to be determined by the Land Department, and as there was a contest, the contending parties were called on in the usual way to make their proofs. They appeared, and full opportunity was given Scott to be heard. He presented his evidence and was beaten, after having taken the case through by successive stages on appeal to the Secretary of the Interior. This, in the absence of fraud, is conclusive on all questions of fact. We have many times so decided." See also *Harvey v. Holles,* 160 F. 531 (N. D. Ia.).

Code, 1957, Art. 54, Sec. 1, makes the Commissioner of the Land Office "a court of record", and Code, 1957, Art. 5, Sec. 20, gives the right of appeal to the Court of Appeals

from any judgment, final order or determination made by the Commissioner in any case affecting title to lands. This Court, in *Jay v. Van Bibber*, 94 Md. 688, held that since the land office is a court of record, its proceedings cannot rest in parol, and that the Commissioner, in hearing and determining a disputed case, acts judicially.

It may well be that the court below would have committed no error in accepting as conclusive the findings of fact of the Commissioner, but we need not decide the question. By agreement of the parties, because the witnesses were either dead or incapacitated by extreme age, there was read to the court, and into the record, the testimony that had brought the Commissioner to the conclusion he reached. On this testimony, and that of other witnesses before him, the trial court made a redetermination of fact and reached the same conclusions as had the Commissioner, justifiably, we think.

The witness Meredith testified that she remembered a slave of her grandfather, named Margaret Woolford, who lived on and gave "Marg's Lot", which is to the west of the area in dispute, its name, and that in order to get to "Marg's Lot" the witness, as a child, used to walk from the main road across or just off the disputed area, and that the land which she traversed was owned by her Uncle Levin T. Dunnock, and that after he died, her father bought it because it adjoined his land. It was called "Newtown" and also "New Fair." The witness also said that Matthew Gore got the property by will and that he then mortgaged it. The court found that the mortgage referred to was the one that was foreclosed and led to the title of Linthicum and Woolford. The witness also said that her father's line extended to Gum Swamp. Other witnesses testified in substantially the same way, saying that the property in dispute was the same property that was owned by Matthew Gore and later sold to the appellee, or that it was the land "Ollie" claims, and that it contained some eighty-three acres and adjoined Marg's Lot and Gum Swamp.

There was no contradiction to definite testimony that Samuel Woolford never owned but one tract of land in the neighborhood—the one he owned jointly with Linthicum.

There was testimony from Gore, the appellee, and from others as to acts of dominion of the various Gore owners over the lands claimed by them, including the land in controversy, such as the grazing of sheep, putting up of no trespass signs and the cutting of timber, as well as of the occupancy and cultivation of parts of the whole of Newtown or New Fair.

Judge Henry found "beyond question" that the Gores and the Dunnocks had owned, managed, and possessed the area in question for better than one hundred years, except for the period following the mortgage foreclosure, when it was owned by Linthicum and Woolford. He held that the various muniments of title, made plain by the testimony, established good paper title in the appellee. In addition, he determined that appellee had shown good title by adverse possession.

We think the decision below should be affirmed on the latter ground. The Gores held under color of title—that is, under title papers good enough in appearance and ostensible effect to give them the right to the bona fide belief they held that they owned the land. They entered into actual possession of part of their land and, as bona fide claimants to ownership, thus acquired possession to the extent of the boundaries claimed in their title. The testimony permitted the finding made by the trial court that the claimed boundaries embraced the area in dispute and, indeed, showed actual acts of ownership as to that area. Since the entry and occupation were under color of title, the possession of the successive owners in privity of title may be tacked to give the required continuity for the necessary period. These various propositions are established by *Gore v. Hall, supra,* 206 Md. 485, 491. See *Schlueter v. Ackerman,* 215 Md. 173; and compare *Goen v. Sansbury,* 219 Md. 289, 149 A. 2d 17.

The lower court did not err in entering judgment for Gore.

*Judgment affirmed, with costs.*