SKIPPER ET UX. *v.* PAUGH

[No. 299, September Term, 1965.]

*Decided May 25, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Ronald C. Brubaker* for the appellants.

*Lewis R. Jones,* with whom was *Stephen R. Pagenhardt* on the brief, for the appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Skipper sued Paugh in trespass *quare clausum fregit.* A Garrett County jury, on 29 April 1965, rendered a verdict in favor of Paugh (appellee). This is Skipper's appeal.[1]

The locale, at one time part of the grounds of the Deer Park Hotel, is about 1,000 feet west of the corporate limits of the town of Deer Park. The land in dispute lies in the northwest and southwest quadrants of the intersection formed by Md. Route 135 (Mountain Lake Park to Deer Park) and the county road known as the Broadford Road (Oakland to Deer Park). Skipper, whose land is in the southwest quadrant, claims the location of his northern boundary is 15 feet (in some places as much as 30 feet) north of the Broadford Road. Paugh, whose land occupies the northwest quadrant, claims to the north side of the road and says Skipper's northern boundary is the south side of the road.

The facts, to the extent we have been able to ferret them out, appear to be as follows. In 1943 J. Edward Helbig, a former county commissioner, bought a tract of 137.5 acres, with about

---

1. The appeal is taken by Skipper and his wife, but they will be referred to herein as "appellant".

a mile of frontage on Route 135. The Broadford Road divides the northernmost part (about ¼) from the southernmost part. About a year later he made his first sale, 8.61 acres, to George Paugh (not the appellee). The 4th line of that tract is described as running "North 26° 52' East 327.20 feet to a stake standing on the *South margin of the aforesaid Broadford Road.*" The 5th line runs *"with the south margin thereof,* North 64° 45' West 300 feet to a stake." Another year went by before he made his second sale. That was to Cecil Ramsey. The 1st line of his 8.5 acre tract runs "to a stake standing on the *North margin of the County Road known as the Broadford Road.*" The 2nd line runs "with the *North margin thereof* * * * to a stake." Mr. Helbig testified he intended Ramsey to be north of the road and George Paugh to be south of the road.

In 1948 George Paugh sold his 8.61 acre tract to Romesburg, using precisely the same description. In 1951 Romesburg sold the same 8.61 acre tract to Breedlove, again using the same description. Nine months later Breedlove sold Skipper .23 of an acre (100 x 100) at the intersection of the two roads. Skipper's description begins at a stake at the end of the 4th line of the description in the deed from George Paugh to Romesburg which, it will be recalled, ran to "a stake standing on the South margin of * * * Broadford Road." Skipper's beginning point, therefore, has to be on the South side of the Broadford Road. His 3rd line runs "to a stake standing on the 5th line" of George Paugh to Romesburg, and his 4th line runs "with said 5th line reversed * * * to the place of beginning." In George Paugh to Romesburg, as has been pointed out, the 5th line runs *"with the South margin"* of the Broadford Road.

In 1956 Skipper bought from Breedlove an additional 1.45 acres, immediately adjacent to the .23 acre lot and with frontage on both Route 135 and the Broadford Road. In the deed the tract is described generally as lying along Route 135 and *"along the South side of the Broad Ford [sic] County Road."* The 4th line of the description runs "with the South margin of the Broad Ford [sic] County Road and with part of the 5th line reversed of the 8.61 acre tract" which, it will be remembered, also ran "with the South margin" of the Broadford Road.

Although the deed is not in the record Harry Paugh (ap-

pellee) testified he acquired Cecil Ramsey's 8.5 acres on the north side of the Broadford Road in 1955.

Skipper attempts to explain away the plain language of the deeds by saying his description is wrong and that, moreover, in 1949, the location of the Broadford Road was changed. It very well may be, as he says, that his road frontage along Route 135 (180 feet according to his deeds), if measured from the line claimed by the adjoining owner to the south, would extend about 15 feet beyond the north side of the Broadford Road. All this proves, however, is that there is something awry in the description of the adjoining owner because it is clear that Skipper was Breedlove's first grantee, that George Paugh was Helbig's first grantee, and that Breedlove acquired the same property from George Paugh via Romesburg. To support his claim that the location of the road was changed we have only his bare statement. To the contrary we have the testimony of three quite respectable witnesses. Commissioner Helbig, who demonstrated considerable familiarity with the area, said flatly, "The road has never changed. The present road they are using there now was in there when I bought the property * * *." Robert Garrett was born and raised in Deer Park. His home is about ⅓ of a mile from Skipper's lot. He is now 70 years old and he has been over these roads frequently. A photograph of the road taken by him in 1920 was admitted in evidence. Asked if there had been any change in the location of the road, he replied, "None to my knowledge." It is interesting to note, in respect of the accuracy of his testimony, that on the back of the photograph there is a notation, in copperplate handwriting, that the picture was taken 12/29/20 at 10:30 A. M., that the lens opening was F.8, that the shutter speed was 1/105 of a second, and that a specific type of film was used. Troy Smith, who was produced as a witness by Skipper, testified he had lived ½ mile down the road for about 25 years. Asked if there had been any change in the location of Broadford Road he said, "If there has, it's been done [a] very, very small change. To my recollection it's the same place."

Paugh, upon realizing that Skipper intended to press his claim, exhibited an uncommon practicality. His attempt to settle the dispute is best expressed in his own words:

508

"No offer [of settlement] was made [by me]. I was interested to the extent of trying to settle it without court. If he was dissatisfied, which he apparently was, and he claimed he owned it and I had a deed for it and I claimed I owned it, but rather than to drag it into court like we are in here today I would have given him a reasonable amount for it, no question about that, I don't deny that, but I didn't feel that he owned it whatsoever."

Paugh had built three houses fronting on the north side of the Broadford Road just west of Route 135 and Skipper's claim, if sustained, would have deprived two of the houses of access to the road. This circumstance probably induced Skipper to overestimate the cash value of his claim. He couldn't "remember whether * * * [his] price was too high or what. He [Paugh] shook his head no, no, and walked off."

Skipper contends Paugh was required to prove his title and that the evidence offered by him was insufficient for that purpose. The late Aaron Burr is said to have defined the law as that which is boldly asserted and plausibly maintained.[2] Parties who rely on Burr's theory should provide, at least, the plausible maintenance. Skipper has furnished only the bold assertion. *Spicer v. Gore,* 219 Md. 469, 150 A. 2d 226 (1959) ; *McAuliffe v. Lerch,* 189 Md. 672, 57 A. 2d 329 (1948) ; *Ridgely v. Bond,* 17 Md. 14 (1861). The sufficiency vel non of Paugh's evidence is, of course, immaterial.

Skipper cites *Zawatsky Co. v. Feldman Corp.,* 203 Md. 182, 100 A. 2d 269 (1953) in support of his third contention which seems to be that a course and distance will prevail over a call when to do otherwise will defeat the manifest intention of the parties. Although it should suffice to observe that here the intention of the parties is unmistakably to the contrary, Skipper's contention overlooks the fact that the *beginning point* of the .23 acre lot *is* the southwest corner of the intersection of Route 135 and the Broadford Road.

His final contention deals with the admission in evidence of a plat which was prepared, admittedly from deed descriptions

2. Parton, *Life and Times of Aaron Burr,* Vol. i, p. 149.

only, by his own surveyor, Frank Corliss. When the plat was offered by counsel for Paugh, during his cross-examination of Corliss, Judge Getty asked if there was "any objection." Counsel for Skipper replied "No objection," which seems to us to be the complete answer to this contention.

Although the entire transcript has been examined with great care, we have not discovered a single objection or exception made by appellant. Only one of appellee's objections (no longer material) was sustained but it is not argued (either orally or in the briefs) that Judge Getty's ruling thereon was prejudicial. Appellant did not move for a directed verdict nor did he ask the court to instruct the jury in any respect. He did not except to the court's charge to the jury nor did he file a motion for a new trial. Although we have reviewed the evidence and discussed appellant's contentions there is really nothing before us and we perceive no reason why the judgment of the trial court should be disturbed. *Galbraith v. Oswald,* 237 Md. 620, 205 A. 2d 797 (1965). Maryland Rule 885. (All emphases supplied).

*Judgment affirmed. Appellant to pay the costs.*