## STOTTLEMYER, ET UX. *v.* KLINE

[No. 8, September Term, 1969.]

*Decided November 20, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Vincent R. Groh* and *John S. Hollyday* for appellants.

*Howard W. Gilbert* and *Ralph H. France, II,* with whom were *Ottinger, Mackley & Gilbert* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal presents us with the question of whether or not the Circuit Court for Washington County (Naughton, J.) was in error in deciding, in an action of trespass *quare clausum fregit,* that Melvin L. Draper and Abbie Jean Draper, his wife, the grantors of the appellee Eugene B. Kline, the plaintiff below, had title to an eight and one-half acre tract of land on the northerly and westerly side of Antietam Creek in Washington County.

For a better understanding of the somewhat complicated facts in the case, the Court has prepared a plat showing the disputed land and other relevant data. The Reporter is directed to print this plat as a part of this opinion. (See p. 650, *infra*)

The appellee Kline, beginning in 1964, rented the eight and one-half acres of land in question, which lies generally on the northerly and westerly side of Antietam Creek, approximately one-fourth of a mile from the junction of the creek with the Potomac River, from Melvin L. Draper and wife. The Drapers acquired the 61 acre farm, which they claim includes the land in question, by virtue of a deed dated August 13, 1962, and duly recorded, from Omer T. Kaylor, Jr., Committee of William G. Tucker Incompetent, which conveyed to the Drapers:

> " "* * * all that tract of land, together with the improvements thereon, and all the rights and easements thereunto belonging, lying at the junction of the Antietam Creek with the Potomac River, in Washington County, Maryland, containing 61 acres of land, more or less, of good

aerable land whereon a large frame flour mill
was situate at the Antietam Iron Works at the
Antietam Creek.' "

This deed recited that the 61 acre parcel was a por-
tion of a larger tract known as Tract No. 220 of the
Antietam Iron Works originally containing over 1,000
acres. By tracing the chain of title of the Drapers back
to 1855, the surveyors were able to obtain a metes and
bounds description for the boundary line between the
Draper land and that of the Stottlemyers as hereinafter
set forth. The appellants, the Stottlemyers, own the 10½
acre tract, marked Parcel 2 on the attached plat which
lies to the north and west of the land in dispute.

The present case involved the second cause of action
in trespass *quare clausum fregit* adjudicated between the
parties in regard to the ownership and the right to pos-
session of the land in dispute. In 1964, the Stottlemyers
filed an action of trespass *q.c.f.* in the Circuit Court for
Washington County (the first case) against the Drapers,
the appellee Kline and Julia L. Kline, his wife, and
others, to recover damages for their alleged trespass to
the disputed land. Much testimony was taken and sev-
eral documentary exhibits were introduced into evidence.
The first case was tried before Judge Hamill, without
a jury. Judge Hamill rendered an opinion and verdict
for the defendants on January 19, 1965. From a judg-
ment for costs for the defendants, the Stottlemyers ap-
pealed to this Court, but later dismissed this appeal so
that the judgment in the first case became final. Because
the appellee relies on *res judicata* in establishing certain
issues in the present case, it is necessary to set forth
substantial portions of Judge Hamill's opinion and ver-
dict in the first case, as follows:

"The question which the Court is called upon
to decide in this case, which is an action in
trespass, is whether or not the Plaintiffs have
title to the property on which the alleged tres-
pass occurred and whether or not the Defen-
dants trespassed on said property.

"It is undisputed that the Plaintiffs have title to a ten and one-half acre tract of land which was carved by mesne conveyances out of a larger tract known as 'Antietam Iron Works' situate in Washington County, Maryland; and it is likewise undisputed that the Defendants have asserted possessory rights, to the extent of planting crops hereon, upon a small parcel of land consisting of approximately three acres in the aforesaid tract of land known as 'Antietam Iron Works,' being part of or adjoining the southeastern portion of said ten and one-half acre tract. The aforesaid three acres was referred to throughout the trial as 'The Bottom Land,' and is the land involved in this proceeding.

"The testimony in this case was lengthy and the exhibits voluminous, including maps, plats, land records, aerial photographs, transparent overlays and surveys. A large amount of testimony was by Land Engineers and Surveyors.

"In an action in trespass it is incumbent upon the Plaintiffs to prove title to the property in question by a preponderance of the evidence on which the alleged trespass occurred, and the Defendant need not be required to prove any title either in himself or a third party.

"The question here is the location of the Plaintiffs' boundary at the southeastern portion of their said ten and one-half acre tract. After a thorough review of all of the testimony and the evidence adduced by the exhibits, particularly the plats, overlays and the testimony of the Engineers, I am of the opinion that the Plaintiffs have not proved legal title by a preponderance of the evidence over the disputed three acres of land, more or less. Without passing on the title to said three acres, more or less, I think it suffices to say that certain land exists between the

Stottlemyers' southeastern boundary and the Antietam Creek as shown particularly by the transparent overlay on the aerial photographs and by the metes and bounds description and survey of the Plaintiffs' land. There was testimony and evidence to the effect that many years ago a dam existed at the southeastern portion of the plaintiffs' ten and one-half acre tract which said dam is now non-existent and which could certainly account for additional land. The fact that an actual survey of the Plaintiffs' land reveals that they own more than the ten and one-half acres called for in their Deed is immaterial and irrelevant since it does not in any way change or affect the boundary lines of said ten and one-half acre tract; nor is there sufficient evidence in this case to prove ownership of the disputed three acre tract adjoining said ten and one-half acre tract, over which the alleged trespass occurred, by adverse possession."

As already noted Judge Hamill entered a verdict for the defendants for costs upon which a judgment was duly entered.

In the spring of 1966, Kline, who is the father of Mrs. Draper, having leased the land in dispute from the Drapers, planted approximately three and one-half acres of the disputed land in corn, at a cost to him of $10.00 for seed and $149.75 for labor and equipment. On July 3, 1966, when the corn was between three and four feet in height, a number of cows owned by the Stottlemyers came upon the disputed land and destroyed the corn crop which had been planted by Kline in the spring of 1966. The cows came down from a pasture owned by the Stottlemyers located upstream from the corn field and through a natural opening between the creek and a steep cliff. This opening was on part of the disputed land and at one time had been fenced, but the fence had been removed by some unidentified person. The cows continued

to come into the corn field subsequent to July 3 and although Kline was aware of their presence, he made no effort to drive them out or to replace the 20 to 40 feet of fencing necessary to close the opening through which the cows entered the corn field.

Kline filed an action on July 7, 1966, in the Magistrates' Court for Washington County against the Stottlemyers, claiming damages of $150.00, this claim being later amended on July 18, 1966, to $650.00 to cover damages allegedly suffered since the institution of the action. The Stottlemyers, claiming title to the disputed land, notified the Magistrate to that effect by affidavit and the Magistrate quite properly in accordance with Code (1957), Art. 52, Sec. 9 refused to take further cognizance of the action. He sent it to the Circuit Court for Washington County for trial. The lower court and the parties treated this action as an action of trespass *quare clausum fregit;* and we will so consider it notwithstanding some informality in the pleadings in the Magistrates' Court. At the trial of the present case, the entire file in the first case was introduced into evidence by the plaintiff Kline and in addition there was considerable testimony principally directed at the question of adverse possession. There was also introduced into evidence certain additional documentary evidence and Ralph H. Donnelly, a civil engineer and surveyor, testified for the Stottlemyers in the present case.

At the end of the case presented by the plaintiff Kline, the Stottlemyers made a motion for a directed verdict in their favor, which was denied by the lower court. At the end of the entire case, Judge Naughton, before whom the present case was tried without a jury, stated:

"BY THE COURT: Well, I feel, perhaps I will need the testimony of the Civil Engineer in the previous case, and I may be very frank with you, it will boil down probably to which Civil Engineer is correct. If I find they are both correct, of course, that will end the case, but I

can't decide anything today, so I will ask, instead of writing all the testimony in that case, there is too much there, I believe all I would want would be the Civil Engineer's testimony."

Thereafter, Judge Naughton gave the following opinion and verdict:

"The Court sitting as a jury finds that the Plaintiff, Eugene B. Kline, leased from Mr. and Mrs. Melvin Draper, a strip of land lying along Antietam Creek in Washington County, Maryland, containing approximately 8.8 acres, in a part of which said land he planted corn. The Court further finds that Mr. and Mrs. Melvin Draper are the owners of this property and had a right to lease it to the Plaintiff. The Defendants, through negligence in failing to maintain their line fence which adjoins the Draper property permitted their cattle to enter upon said leased land, causing damage to the Plaintiff's corn crop.

"The Court further finds that there should be a diminution of damages in this case since the Plaintiff failed to exercise reasonable diligence in protecting his corn crop after he discovered the cattle on his leased land.

"For the reasons stated a Verdict will be entered in favor of the Plaintiff and against the Defendants. Damages are assessed at Four Hundred ($400.00) Dollars."

Judgment for $400.00 and costs was duly entered and the Stottlemyers took a timely appeal from that judgment.

The issues in the present case are substantially narrowed by the legal effect of the judgment in the first case which concluded by virtue of the doctrine of *res judicata*, various issues between the parties. Although the judgment in the first case did not establish that title to the

land in dispute was in the Drapers—see *Taylor v. Scott,* 255 N. C. 484, 122 S.E.2d 57 (1961)—it did establish that:

1. The Stottlemyers did not own the disputed land;
2. Certain land, undisputed either in description or amount, lies between the land of the Stottlemyers and Antietam Creek;
3. A dam existed at one time at the southeastern portion of the land in dispute, but no longer exists and the falling into disuse of this dam could account for substantially all of the land between the land of the Stottlemyers and the creek;
4. The fact that a survey of the 10.5 acre tract of the Stottlemyers (Parcel 2) indicates that this tract contains more land than ten and one-half acres is not relevant in that this fact does not affect the boundary lines between the 10.5 acre tract and the disputed land; and,
5. The Stottlemyers do not have title to the land in dispute by adverse possession.

We held in *Messall v. Merlands Club, Inc.,* 244 Md. 18, 37, 222 A. 2d 627, 637-638 (1966), that in considering a judgment, for the purposes of applying the doctrine of *res judicata,* which makes a general finding but where the Court has filed an opinion as a part of the record in the rendition of that judgment, we may consider that opinion to ascertain what was in the mind of the court when the judgment was rendered to ascertain the scope of the matters concluded by the judgment. See *Davis Sand and Gravel Corp. v. Buckler,* 231 Md. 370, 375, 190 A. 2d, 531, 533 (1963). The findings of the court are then conclusive as between the parties and cannot thereafter again be litigated between the same parties in regard to the same subject matter. These decided matters are conclusive even though the parties, or any one of

them, had not brought forward their entire case (except under special circumstances) and even if they omitted a part of their case because of "negligence, inadvertence or even accident," *Mettee v. Boone,* 251 Md. 332, 341, 247 A. 2d 390, 395 (1968).

The doctrine of *res judicata* clearly applies in the present case which involves the question of ownership of the same land between the same parties, as were involved in the first case.

As Chief Judge Hammond, for the Court, aptly stated in *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 35, 238 A. 2d 100, 102 (1968) :

> "The basic rule of res judicata is that facts or questions which were in issue in a previous action and were therein determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties or their privies even though the subsequent suit takes a different form or is based on a different cause of action." (citing prior Maryland cases)

Unfortunately, Judge Hamill's opinion, verdict and judgment in the first case does not conclusively establish that *the Drapers* had title to the land in dispute. They were *defendants* in the first case and it is well settled that in actions of trespass *q.c.f.,* the plaintiff (the Stottlemyers in the first case) must recover upon the strength of his title and not upon the weakness of the defendant's title. *Spicer v. Gore,* 219 Md. 469, 473, 150 A. 2d 226, 228 (1959) and cases therein cited. See also, *Skipper v. Paugh,* 242 Md. 504, 508, 219 A. 2d 554, 556 (1956) citing *Spicer v. Gore, supra,* with approval.

As pointed out, Judge Hamill found that the plaintiffs Stottlemyers had not established *their title* to the disputed land, but he properly declined to decide who did have good title to the land in dispute inasmuch as he

was not required to do this in order to dispose of the first case. The Stottlemyers, as *defendants* in the present case, may still seek to defeat the action of the plaintiff Kline on the ground that the Drapers, as Kline's lessors, did not have title to the disputed land, even though it had previously been conclusively decided that the Stottle-myers did not have good title to the land in dispute. The issue is whether or not the trial court in the present case erroneously found that the Drapers were the owners of the disputed land and had the right to lease it to Kline. Three questions have been presented to us:

1. Was there sufficient evidence to support a finding that the Drapers had good record title to the disputed land?
2. In any event, was there sufficient evidence to establish the Drapers' title by adverse possession for the required twenty-year period?
3. If the basis of the Drapers' title is adverse possession, is title established for more than 3.5 acres of the 8.5 acres of disputed land?

We have concluded that there was sufficient evidence to support the trial court's finding that the Drapers owned the disputed land on the basis of their good record title to that land. We, therefore, do not find it necessary to consider the other two questions mentioned, even though there was strong evidence from which the trial court could well have found that the Drapers did indeed have title by adverse possession which legally covered the entire 8.5 acre tract of disputed land. As we read the record, the trial court most likely decided the ownership of the Drapers on the basis of good record title as it did not make any specific findings or comments in regard to the testimony relating to adverse possession. Its closing remarks suggested that, in the Court's opinion, the decision of the case turned upon which civil engineer was correct.

Draper K. Sutcliffe, a civil engineer and land surveyor, testified for the Drapers in the first case that his search

of the land records and work at the site had enabled him to plat the location of the Stottlemyers' 10.5 acre tract (he found that this tract—Parcel 2—actually contained 13.3 acres) and the location of the 61 acre farm of the Drapers as it touched the common boundary line of the 10.5 acre tract of the Stottlemyers. He went back to Lot No. 220 of the larger tract of which the Drapers' land was originally a part. He also found that the 8.5 acre tract of land in dispute actually contained 8.8 acres. He traced the Draper title back to the deed from Levi Estow to John Hornie dated October 6, 1856, recorded among the Land Records of Washington County on February 2, 1857. This deed was for three parcels of land, the Draper land being part of Parcel 3 which describes 615 acres. Mr. Sutcliffe's plat, showing the monuments, courses and distances of the line between the 10.5 acre Stottlemyer tract and the 8.5 acre tract in dispute, was introduced into evidence.

Ralph H. Donnelly, civil engineer and land surveyor, testified for the Stottlemyers and his plat was introduced into evidence in the present case. Mr. Donnelly traced the 10.5 acre Stottlemyer tract in the land records to a deed dated April 23, 1853, from Jonathan Meredith and John Spear Nicholas to Hezekiah Boteler and Barton Boteler, and duly recorded, in which the boundary in question was described, in part, as follows:

"* * * North thirty five degrees East nineteen perches to a stone *near* the Antietam Creek, thence *with the meanderings of said creek within four feet of the water the sixteen following courses and distances,* viz., South forty three and a half degrees East twelve perches" * * * then follow the other courses and distances * * * to "South eighty nine and a half degrees West Twelve perches, *then leaving said creek* North eighty one degrees West twelve perches, North seventy five degrees West eight perches * * *" (Emphasis supplied.)

In the plat prepared by Mr. Donnelly appears the following note opposite the 16 courses and distances on the disputed boundary line:

"Note: 16 courses 4' from water of Antietam Creek."

On the overlay plat showing the boundary lines of both Parcels 1 and 2 of the Stottlemyers' land under the words "Antietam Creek" appears the following:

"(These courses and distances given as 4' from water in deeds)."

It thus appears from the evidence produced by the Stottlemyers themselves that the boundary line of Parcel 2—the 10.5 acre tract—which separates that land from the land in dispute is established by deeds of record with a call to a stone, not *on the bank* of Antietam Creek but *four feet* from the bank. In addition to this artificial monument, which is still in place and located on the ground by all the surveyors, the sixteen courses and distances which follow the "meanderings of Antietam Creek" are *all four feet* from the then bank of the creek. This testimony, which is uncontradicted, establishes that the Stottlemyers never owned any land abutting Antietam Creek and that a narrow strip four feet wide was owned by someone other than the Stottlemyers as owners of the 10.5 acre tract. In short, the Stottlemyers were never abutting riparian owners and hence the legal doctrines in regard to accretion, reliction and other doctrines of law relating to riparian owners are not applicable so far as the owners of the 10.5 acre tract are concerned. See *Kelly v. Nagle,* 150 Md. 125, 139-140, 132 A. 587, 593 (1926) ; 2 Tiffany on *Real Property,* Third Ed., Sec. 665, page 716. See also Vol. III, *American Law of Property,* § 15.28, page 860, where it is stated:

"For the doctrine of accretion to be applicable, it is necessary that there shall be a water bed and that the land for which the addition is claimed shall at the time thereof have extended to the water's edge. Any separation of the claimant's lands from the shore line defeats his right

"to accretions or relictions by reason of the fact
that they attach instead to the intervening strip.
In other words, it is only land which touches the
shore which is entitled to these additions."

Although J. Harold Seibert, County Surveyor, who tes-
tified in the first case, had originally been of the opinion
that the Stottlemyers as owners of the 10.5 acre tract
were owners of the land in dispute, he testified that, up-
on further research and reflection, he had changed his
mind. When asked about his former opinion, he stated:
"Yes, from our surveys and from observations on the
ground we changed our minds entirely about this." He
further testified in regard to the land in dispute that in
his new opinion, the Stottlemyers did not own the dis-
puted land.

Draper K. Sutcliffe, a qualified civil engineer and land
surveyor who testified for the defendants, Draper, *et al.*,
in the first case and who prepared a plat introduced in-
to evidence showing the 10.5 acre tract, the land in dis-
pute, Antietam Creek as it presently flows and other data,
stated that he had traced the Draper 61 acre farm back
to the deed of October 6, 1865, from Estow to Hornie,
already mentioned, and found that the Draper land came
from the third parcel described in that deed. He found
and Judge Hamill followed his testimony by relating the
description for the boundary line in question to the Sut-
cliffe Plat, that the courses and distances were almost
identical with those given by Mr. Donnelly in his testi-
mony except that they were reversed in the description
in the deed of October 6, 1856.

The final result of all the expert testimony and other
evidence was that there really was no ultimate dispute
among the experts in regard to the *location of the dis-
puted boundary* both as described in the relevant deeds
and as appeared on the ground, although Mr. Donnelly
was of the opinion that the Stottlemyers owned the land
in dispute. The stones called for in the deeds are still
there and, curiously enough, after all these years, there

is a twin elm growing at the place of the call "to an Elm tree,"— possibly a descendant from the original Elm tree—and there is a dead oak where the original call was "to a white Oak tree."

An examination of Plaintiffs' Exhibit No. 13 in the first case which was a photostatic copy of a plat, dated March, 1850, and bearing the legend "Part of Antietam Iron Works, Containing 161½ Acres," with a scale of 1″—30 perches (495′) shows a line *near* the then bank of Antietam Creek but the line appears to be a short distance away from the water of the Creek, itself.

The deeds and other evidence indicate an intention of the original draftsmen to insure that the owners of the land on the north and east side of Antietam Creek *should not have any rights as a riparian owner* abutting Antietam Creek as it then flowed, in that the boundary established never did abut the creek. One possible reason for this intention would be that there was a desire to protect the undiminished and uninterrupted flow of the creek toward an existing or contemplated mill race, located or to be located on the Draper side of the creek. Another possible reason was to avoid having Antietam Creek as a boundary with the difficulties which result when the creek might change its course or when the water level might rise or fall. In any event, the deeds speak for themselves and the owners of the 10.5 acre tract had no land at any time which abutted the banks of the creek.

The Stottlemyers correctly point out that under the Maryland law a call for monuments, either natural or artificial, prevails over courses and distances in the same deed. *Dundalk Holding Co. v. Easter,* 195 Md. 488, 495, 73 A. 2d 877, 879 (1950). It is also well established that the line of an adjacent tract, if proved and established, may serve as a call in a deed as well as a natural object. *Id.,* 195 Md. at 495, 73 A. 2d at 879. As we have seen in the present case, the call was to a stone, as a monument, four feet from the water of the creek and the courses and distances then continued from that monu-

ment to other monuments, *all* four feet from the water of the creek. In summary, the creek itself was never a monument in the description and the 10.5 acre tract never abutted the waters of Antietam Creek.

In view of all the evidence, it seems clear to us that the Drapers were the holders of the legal title of record to the four-foot strip of land originally between the boundary line of the 10.5 acre tract and the then water of Antietam Creek as well as of the land on the other side of the water of Antietam Creek. When the level of the water in the creek was substantially lowered by the collapse or disuse of the dam farther south, the land then appearing was owned by the owners of the fast land on both sides of the creek. As was well stated in Vol. III, *American Law of Property* § 15.29, p. 862:

> "A recession of water corresponding to a natural reliction may occur from drainage due to an avulsion or to artificial means. In either event the title to the bed will continue in the party who previously owned it."

See *State v. Longyear Holding Co.*, 227 Minn. 255, 35 N.W.2d 291 (1948) and the note on this case in 32 Minn. L. Rev. 484 (1948). See also the annotation "Water: rights in respect of changes by accretion or reliction due to artificial conditions," 134 A.L.R. 467.

We cannot say that the trial court erred in holding that the Drapers owned the land in dispute and awarding damages for the trespass to that land.

*Judgment affirmed, the appellants to pay the costs.*