HENRY ST. JOHN SMITH *vs.* LORENZO D. M. SWEAT.

Hancock.    Opinion August 2, 1897.

*Deed.   Description.   Boundaries.   Monuments.*

Plaintiff claimed title to the premises demanded under three mortgages of different dates, the last two of which have been foreclosed. Defendant, under a fourth mortgage from same mortgagors, and also under a deed from the assignees of the mortgagors, in which the mortgagors join, the description in the deed being such, as the defendant contended, as to embrace a larger tract than that covered by the plaintiff's mortgages.

The land described in the several mortgages was bounded in each as follows: " On the north by the street sometime called West End Avenue; on the east by land formerly of James Hamor, deceased; on the south and west by land of John A. Rodick."

The premises demanded were conveyed to the mortgagors by three separate conveyances, the last two being additions to the first purchase.

The descriptive words of the bounds contained in the title deeds, of the first purchase, to the mortgagors, are identical with those contained in the several mortgages. But the boundaries, although identical in each mortgage, and although the mortgages were given at different times, are true and correct as applied to the facts existing at the times when the several mortgages were given.

The mortgages are not to be construed together, but as separate instruments, and in reference to the facts existing at the different times when they were given.

The same terms, or words of description, therefore, although identical in the several mortgages may properly cover and include distinct and different tracts, being descriptive of such tracts as bounded at the date of the different mortgages, and hence may cover more land in one case than in another and follow a receding line.

The boundaries may have receded, and yet the same words may be aptly used to meet the changed conditions at the time when the mortgages were written.

A particular description of premises conveyed, when such particular description is definite and certain, will control a general reference to another deed as the source of title.

Nor will a clause in a deed, at the end of a particular description of the premises by metes and bounds, " meaning and intending to convey the same premises conveyed to me," etc., either enlarge, or limit, the grant.

When a deed gives a boundary by land of another, the true line of the ownership of the adjoining land is the monument.

And it matters not whether the deed of the land referred to is recorded or not.

On Report.

The case appears in the opinion.

*H. E. Hamlin*, for plaintiff.

*J. W. Symonds, D. W. Snow and C. S. Cook*, for defendant.

Sitting:  Peters, C. J., Foster, Haskell, Wiswell, Strout, JJ.

Foster, J.  This is a real action to recover possession of a parcel of land in Bar Harbor, known as the "West End Hotel" property, which parcel as described in plaintiff's writ includes three lots marked respectively, "First Purchase," "Second Purchase," and "Third Purchase" on the plan which is made a part of the case.

The plaintiff claims title under three mortgages, and foreclosure of the second and third mortgages.  In each of these three mortgages the description of the premises is substantially the same.

The defendant claims under a fourth mortgage from the same mortgagors, in which the description is substantially the same as in the three mortgages of the plaintiff, and also under a deed from the assignees of the original mortgagors, in which the mortgagors join, the description in the deed being much fuller, and, as the defendant contends, conveys a larger tract than is conveyed by either one of the four mortgages.

The defendant claims that the four mortgages conveyed the lot

which upon the plan is marked "First Purchase," and nothing more; that the later deed to him from the mortgagors and their assignees conveyed to him the lots which are marked "Second Purchase" and "Third Purchase."

The defendant seasonably disclaimed any right, title or interest in the lot marked "First Purchase," and as it is admitted that he was not in possession of the premises marked "First Purchase" at the time this action was commenced, the real question, therefore, is, whether the plaintiff's mortgages cover the "Second Purchase" and "Third Purchase," or only so much as is marked "First Purchase" upon the plan.

The question at issue, then, is in reference to the true construction of the three mortgages under which the plaintiff claims title. He cannot prevail upon the issue raised by the pleadings unless he proves title as against the defendant to the part not disclaimed.

All the property was at one time owned by Oren M. Shaw and Fred A. Shaw, who for a long time conducted the West End Hotel under the firm name of O. M. Shaw & Son, and from whom both parties to this action claim title.

At the time when the first mortgage was given to plaintiff (March 17, 1881,) the Shaws were owners of "First Purchase" and "Second Purchase"—the "First Purchase" by deeds of undivided halves from one James P. Armbrust, dated May 7, 1880, and March 17, 1881, and the "Second Purchase" by deed from John A. Rodick, dated May 26, 1880, (though not recorded till November 26, 1881.)

The description of the premises contained in the mortgage is as follows: "A certain parcel of real estate situated at Bar Harbor, in the town of Eden, Hancock County, State of Maine, to wit: the parcel known as the 'West End Hotel' or 'Haywood House Lot,' and bounded as follows, to wit:—on the north by the street sometime called 'West End Avenue;' on the east by land formerly of James Hamor, deceased; on the south and west by land of John A. Rodick, and containing one acre, more or less. Also all the plant of said 'West End Hotel,' including the furniture, fittings, tools, apparatus, and all other personal property used in

the business of carrying on said hotel and appertaining thereto, wherever the same may now be situate.

" Meaning and intending hereby to convey all the right, title and interest which we acquired by deed of James P. Armbrust to us, dated May 7, A. D. 1880, recorded in Hancock Registry of Deeds, book 172, page 190, and deed from said Armbrust to us of even date herewith. Also all renewals of the aforesaid personal property and all personal property which may hereafter be put upon the premises for hotel uses; but all groceries and other supplies for consumption by guests or servants are excluded from this mortgage."

The second and third mortgages, dated respectively September 20, 1882, and September 15, 1888, are identical in description of the premises, so far as the language is concerned, except in the clause " Meaning and intending," etc., the word " include " is used instead of the word " convey."

The two Armbrust deeds to which reference is made in all the mortgages, and by which the Shaws received title to the " first purchase," contain the following description : " A certain parcel of real estate situated at Bar Harbor, in the town of Eden, Hancock County, State of Maine, to-wit :—the parcel known as the West End Hotel or Haywood House Lot, and bounded as follows, to-wit : on the north by the street sometimes called West End Avenue ; on the east by land formerly of James Hamor, deceased ; on the south and west by land of John A. Rodick, and containing one acre, more or less . . . . Also . . . all the plant of said West End Hotel, including the furniture, fittings, tools, apparatus, and all personal property used in the business of carrying on said Hotel, and appertaining thereto, wherever the same may now be situate."

The descriptive words, therefore, not only of the Armbrust deeds, but of the several mortgages, may be said to be identical. The fact that the Armbrust deeds cover only the " First Purchase," and that in the mortgages reference is made to the Armbrust deeds, " meaning and intending hereby to convey all the right, title and interest which " the mortgagors acquired by those

deeds, is the cause of whatever contention there is in this case ; and compels the court to determine whether the plaintiff's mortgages cover the " First Purchase " only, or the " First Purchase," " Second Purchase," and " Third Purchase." To ascertain this, we must consider not only the language, contained in the mortgages, but the existing state of facts at the time when the several mortgages were given. When this is done, we think the question propounded by the defense may be properly answered, viz: How is it possible to enlarge the exact description contained in the title deeds to the mortgagors of the " First Purchase," so as to make the same terms, without diminution or change, cover and include a larger tract ?

When the first mortgage was given the mortgagors owned both the " First Purchase " and the " Second Purchase." The " First Purchase," by description in the Armbrust deeds of conveyance to the mortgagors, was bounded on the west and south by land of John A. Rodick, on the east by land formerly of James Hamor, deceased, and on the north by West End Avenue. When the " First Purchase " was enlarged by adding to it the " Second Purchase," the " First Purchase " was no longer bounded on the south and west by land of John A. Rodick, but by land of the mortgagors themselves which they had purchased from said Rodick. Notwithstanding the language, descriptive of the premises, contained in the first mortgage is identical with that in the deeds from Armbrust conveying the " First Purchase," yet when that mortgage was given, the mortgagors being the owners of the " First Purchase " and " Second Purchase," it is not correct as bounding the " First Purchase " merely, but is correct in bounding the " First Purchase " as enlarged by the " Second Purchase."

But the defense claims that inasmuch as the language of the description in the Armbrust deeds and the plaintiff's mortgage are identical, the clause " Meaning and intending thereby to convey all the right, title and interest which we acquired by deed of James P. Armbrust to us, dated May 7th, A. D. 1880, recorded in Hancock Registry of Deeds, book 172, page 190, and deed from said Armbrust to us of even date herewith," limits the grant to

only so much as was covered by the Armbrust deeds, or the " First Purchase." This, it is claimed, is strengthened by the fact that reference is also made to the quantity of "one acre more or less."

We do not think the position of the defense can be sustained.

It is too well settled to require the citation of authorities that a particular description of premises conveyed, when such particular description is definite and certain, will control a general reference to another deed as the source of title.

So a clause in a deed, at the end of a particular description of the premises by metes and bounds, "meaning and intending to convey the same premises conveyed to me," etc., does not enlarge, or limit, the grant. *Brown* v. *Heard,* 85 Maine, 294 ; *Hobbs* v. *Payson,* 85 Maine, 498 ; and cases cited. The exception to this rule is where the particular description of land by metes and bounds is uncertain and impossible ; then a general description in the same conveyance will govern. *Sawyer* v. *Kendall,* 10 Cush. 241 ; *Hathorn* v. *Hinds,* 69 Maine, 326, 329.

In the present case the land described in the first mortgage was particularly described and definitely bounded, . . . . " on the north by the street sometime called ' West End Avenue ' ; on the east by land formerly of James Hamor, deceased; on the south and west by land of John A. Rodick." Any reference to the source of the mortgagor's title, or what was meant or intended to be conveyed, cannot limit the grant with bounds as definite as those contained in this mortgage. To hold otherwise would give a construction to the mortgage as embracing only the " First Purchase," with boundaries on the west and south not as they existed at the date of the mortgage, but as they formerly were,—not by land of John A. Rodick, but by land of the mortgagors that was formerly land of John A. Rodick.

What has been said in reference to the first mortgage applies equally to the plaintiff's second mortgage of September 20, 1882, which contains precisely the same description as the first. The mortgagors owned the same property at the date of the second mortgage as at the date of the first,—the " First Purchase " and the " Second Purchase." If the plaintiff's first mortgage em-

braced these two purchases then the second mortgage did also ; the boundaries named in each were the same, and the same boundaries existed at the time when the second mortgage was executed as when the first one was.

The " Third Purchase " was made February 16, 1887, thereby enlarging the parcel embraced in the first and second purchases. After this, the third mortgage was given to the plaintiff, dated September 15, 1888, the descriptive words of the real estate thereby conveyed being identical with the two previous mortgages. After the " Third Purchase " had enlarged the premises embraced in the "First Purchase" and "Second Purchase," the whole parcel, as thus constituted, was bounded the same as before the enlargement, viz:—on the north by the same avenue, on the west and south by land of John A. Rodick, and on the east by land formerly of James Hamor, deceased.

When, therefore, the description contained in plaintiff's third mortgage is applied to the parcel thus enlarged, it certainly is a description which by metes and bounds embraces the enlarged parcel, notwithstanding the *words* of the description are *identical* with those in the deeds conveying title to the "First Purchase" from Armbrust to the mortgagors.

Therefore, it is possible that successive mortgages, each describing the mortgaged estate by *words* identically the same, may embrace and convey different parcels, when such is the intention of the parties. This intention may be considered as effectually expressed in the writing, when the description is plain, specific and adequate to convey the same. *Hathorn* v. *Hinds*, supra. There is no ambiguity in these descriptions; fixed and definite boundaries are given; and these boundaries must prevail, unless we are to attach more importance to a mere reference to source of title, or an intention clause, than to specific descriptions; and this, as we have seen, cannot be done. Words of reference, or of explanation or intention, never destroy a specific grant.

It is true that the particular descriptions in plaintiff's first two mortgages are the same, and it is proper that they should be for they cover the same land, the "First Purchase" and the "Second

Purchase "; but while the *particular words* employed in the third mortgage are identically the same as in the other two, yet in *fact* the *description* is not the same, because by its definite and precise boundaries it covers more land. Each mortgage is to be construed by itself. The one has not necessarily any connection with either of the others. Hence, the same *words* of description employed in successive mortgages may cover more land in one case than in another and follow a receding line. The *words* of description in the successive mortgages may be the same, and yet may refer to different boundaries. The boundaries may have receded, as in the present case, and yet the same *words* may be aptly used to meet the changed conditions at the time when the mortgages were written.

To illustrate: A owns a piece of land bounded on the south and west by land of B, and mortgages to C with such boundaries. Subsequently A buys another piece of adjoining land from B, but, with this addition, A's land is still bounded on the south and west by land of B. A again mortgages to C, using the same *words* of description as in the first mortgage, that is, bounding his land on the south and west by land of B. Can there be any doubt that C would acquire title by mortgage to both of A's lots? Yet here is a receding line; here is a case where the *words* of description in A's second mortgage are the same as in the first mortgage, and yet cover and convey more land. " When a deed gives a boundary by land of another, the true line of the ownership of the adjoining land is the monument." *Jewett* v. *Hussey*, 70 Maine, 433. And it matters not whether the deed of the land referred to be recorded or not. *Bryant* v. *M. C. R. R. Co.*, 79 Maine, 312.

With the view which we have taken in reference to the plaintiff's mortgages it becomes unnecessary to enter further into detail in reference to the facts in the case, or what might be adduced in support of the intention of the mortgagors to convey, by their mortgages, the land described in each.

The entry must be,

*Judgment for the plaintiff for*
*the land demanded.*