MRS. HELEN BEALL COCHRANE ET AL *vs.* MARY
A. HARRIS ET ALS.

*Deeds: construction; description of lots conveyed; reference to*
*another deed conveying the same and other lots.*

A deed executed in 1876, by its granting clause conveyed all the
grantor's "right, title and interest in and to the hereinafter
described pieces or parcels of ground, lying and being" * * *
"as conveyed by T. I. M. and others to W. W. McK. and
others by deed dated June 30, 1885, which deed, etc."; then
followed a description of several lots; the earlier deed, of
1855, conveyed not only the lots specifically described in the
later deed, but also several other pieces and parcels of ground.
*Held,* that the deed of 1876 only conveyed the lots specifi-
cially described in it and did not convey all of the parcels
or pieces of ground described in the prior deed.    pp. 303-304

*Decided June 12th, 1912.*

Appeal from the Circuit Court for Allegheny County, sit-
ting in equity, (BOYD, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, J. (presiding),
PEARCE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*J. W. S. Cochrane,* for the appellants.

Submitted by *Benjamin A. Richmond,* without filing a brief, for the appellees.

THOMAS, J., delivered the opinion of the Court.

In 1855 Thomas I. McKaig and Alpheus Beall, executors of Aza Beall, conveyed unto William M. McKaig and John Beall more than fourteen separate lots or parcels of land in Allegany county, Maryland. The deed contained a description of each lot or parcel and a statement of the consideration for which it was sold. Some of the lots are described by courses and distances, some by reference to other deeds, or by giving the names of the tracts, and others are referred to by their numbers on the plat of the "town of Cumberland" and as fronting on certain streets in said town. One parcel contained two hundred and fifty-five acres of land, another two hundred and thirty-nine and one-half acres, another four and one-fourth acres and another three acres and one hundred and twenty-eight perches, while others are referred to as town lots.

The third parcel mentioned in the deed is described as "all those lots or parcels of ground in the town of Cumberland and fronting on Liberty street and running through and also fronting on Church street, now commonly called Centre street, and which is bounded on the south by the lot of ground belonging to the estate of George Hebb, deceased, and extending from thence north to the lot or parcel of ground heretofore leased to the Mayor and Councilmen of the town of Cumberland by Alpheus Beall and Samuel Eckles, trustees of Richard Beall, deceased, with all the improvements thereon."

The eighth parcel is "all those two lots of ground situate on the west side of Willis Creek in the town of Cumberland and known and distinguished on the plat of said town as lots No. 102 and No. 103 on Beall street in said town as decribed in a deed from Walter Slicer to Aza Beall for the

same dated on the 27th day of November, in the year 1817,"
and the tenth parcel is described as "all that lot being parts
of the tracts of land called "Walnut Bottom" and "The
Brothers" beginning at a stone planted on the east side of
the road leading from Cumberland up Wills Creek at the
upper corner of the Meadows, then belonging to the said
Aza Beall and reversing the fourth and third lines of said
Meadow lots, north eighty-three degrees East thirty-two
perches, South fifty-five and one-half degrees East fifteen
and one-half perches, then North thirty-one and three-fourths
degrees East forty-one and twenty-hundredths perches to the
forty-seventh line of 'The Brothers,' then with said forty-
seventh line North seventy-three degrees West twenty-three
and ten-hundredths perches to the end thereof and with the
forty-eighth line and forty-ninth line of said tract South,
twenty-seven degrees West twenty-three perches South eighty-
three degrees West thirty-two perches, then by a straight
line to the beginning, containing four acres and one-fourth
of an acre, more or less, excepting," etc.

In 1860 John Beall, one of the grantees in the deed re-
ferred to, died leaving a last will and testament, by which
he devised his one-half interest in the real estate described
in said deed to Thomas Beall, Alpheus Beall, Sr., Verlinda
McKaig and Priscilla McKaig, as tenants in common, and
in 1872 Verlinda McKaig died intestate and without issue,
and her one-eighth interest in said real estate descended to
the children of her deceased brother, Thomas Beall, and her
brother and sister, Alpheus Beall, Sr., and Priscilla McKaig.

By the will of John Beall, and by descent from Verlinda
McKaig, the children and heirs at law of Thomas Beall
acquired a one-sixth interest in said property, and on the 1st
day of March, 1876, Virginia McCulloh and the other heirs
at law of Thomas Beall executed to Alpheus Beall, Sr., the
deed, a copy of which was filed with the petition in this
case marked Exhibit "H." This deed (Exhibit H) provides:
"That for and in consideration of the sum of nine hundred
and ninety-three dollars and fifty-nine cents, the receipt

whereof in our respective distributive shares we do hereby
acknowledge, we, the said parties of the first part have
granted unto said Alpheus Beall, party of the second part,
all our right, title and interest in and to the hereinafter
described pieces or parcels of ground lying and being in the
said City of Cumberland, County of Allegany and State of
Maryland, as conveyed by Thomas I. McKaig and Alpheus
Beall, Executors of Aza Beall, deceased, to W. W. McKaig
and John Beall by deed bearing date on the 30th day of June,
1855, which said deed is recorded in Liber H. R. No. 13,
folio 680, one of the Land Records of said County of Alle-
gany, and which is described as follows: All those lots or
parcels of ground fronting on Liberty Street in the Town of
Cumberland, and running through and fronting on Church
Street, now called Centre Street, and which is bounded on the
south by the lot of ground belonging to the estate of George
Hebb, deceased, and extending from thence to the lot or
parcel of ground heretofore leased to the Mayor and Coun-
cilmen of Cumberland by Alpheus Beall and Samuel Eckles,
Trustees of Richard Beall, deceased. Also lot numbered one
hundred and two, beginning at a stone marked 102, standing
on the north side of Beall Street and on the west side of
Smallwood Street, and running thence with Beall Street
north 83½ degrees west 101 feet, north 6½ degrees east 171
feet, south 83½ degrees east 101 feet, then by a straight line
to the beginning. Also lot numbered one hundred and three;
beginning at a stone marked 103 standing on the north side
of Beall Street and at the end of the first line of lot numbered
102, and running thence with said street north 83½ degrees
west 101 feet to a stone standing on the east side of Spruce
Alley north 6½ degrees east 171 feet, south 83½ degrees
east 101 feet to Lot No. 102, then by a straight line to the
beginning.

"Together with all and singular the improvements to said
pieces or parcels of ground belonging and all the rights and
privileges thereto appertaining, together with all the right,

title and interest of the parties of the second part in and to all rents, issues and profits that have accrued or may hereafter accrue from said pieces or parcels of ground so hereby conveyed."

A bill having been filed in the Circuit Court for Allegany County by the heirs at law of Alpheus Beall, Sr., for a sale of the four and one-fourth acre lot conveyed by the deed of 1855 to William M. McKaig and John Beall, the plaintiff contended that Alpheus Beall, Sr., who under the will of John Beall and by descent from his sister, Verlinda McKaig, took a one-sixth interest in said lot, acquired another one-sixth interest therein by the deed of 1876 (Exhibit H) from the heirs at law of Thomas Beall, while the defendants disputed that contention, whereupon a petition was filed under section 196 of Article 16 of the Code of 1904, to have the Court determine, as a preliminary question of law, whether said deed (Exhibit H) included the four and one-fourth acre lot, and the appeal in this case is from the decree of the Court below that Alpheus Beall, Sr., did not acquire any title to said lot by the deed from the heirs at law of Thomas Beall.

The property conveyed by the deed (Exhibit H) to Alpheus Beall, Sr., is described therein as "all our right, title and interest in and to the hereinafter described pieces or parcels of ground lying and being in said City of Cumberland, County of Allegany and State of Maryland, as conveyed by Thomas I. McKaig and Alpheus Beall, Executors of Aza Beall, deceased, to W. W. McKaig and John Beall, by deed bearing date on the 30th day of June, 1855, which said deed is recorded in Liber H. R. No. 13, folio 680, one of the Land Records of said County of Allegany and which is described as follows: By the terms of the deed the grant is of the interest of the grantors "in and to the hereafter described pieces or parcels of ground," and the pieces or parcels of ground thereinafter described are "All those lots or parcels of ground fronting on Liberty Street, in the Town of Cumberland, and running through and fronting

on Church Street," etc., and lot 102 and lot 103 on Beall Street.

The learned judge who decided the case in the Court below, after stating that the language of the deed of 1876 did not admit of the construction urged by the plaintiffs, says: "The grant is 'All our right, title and interest in and to the *hereinafter described* pieces or parcels of ground lying and being in the City of Cumberland, as conveyed by Thomas I. McKaig and Alpheus Beall, executors of Asa Beall, deceased, to W. W. McKaig and John Beall by deed bearing date on the 30th day of June, 1855, which said deed is recorded in Liber H. R. No. 13, folio 680, one of the Land Records of said County of Allegany, and which is described as follows:' Then follows the description of the lots fronting on Liberty Street and running through and fronting on Church Street (now Centre) street substantially as described in the deed of 1855, and there are separate descriptions of Lots 102 and 103 by courses and distances, metes and bounds. The deed in so many words conveys the interest of the grantors 'in and to the *hereinafter described* pieces or parcels of ground,' and the only *'hereinafter described pieces or parcels of ground'* are the lots fronting on Liberty Street and running through to Centre Street, and the two lots on Beall Street numbered 102 and 103. There is no reference to the deed of 1855 which can suggest, much less show, that there was an intention of the parties to convey all of the pieces or parcels of ground conveyed by that deed. The term 'as conveyed,' etc., was perhaps an awkward expression, but what was referred to 'as conveyed' by that deed? Manifestly, "the hereinafter described pieces or parcels of ground.' If we read for 'as' 'which were' conveyed, etc., again we would have to go back to see what 'which' referred to, and would find that it could refer to nothing but 'the hereinafter described pieces or parcels of ground.' There are three pieces or parcels of ground 'hereinafter described' and there is nothing whatever to suggest that any parcels of

ground were intended to be conveyed except those three parcels, beyond the mere reference 'as conveyed' by the deed of 1855. But that is not all—after the reference to that deed, the one of 1876 (Exhibit H) goes on to say 'and which is described as follows: All those lots or parcels of ground fronting on Liberty Street, giving the description of those lots *as conveyed* by the deed of 1855. The conveyancer apparently had in mind the rather unusual and not very accurate description of these lots given in the deed of 1855, but probably adopted that description as the surest way of describing the property intended to be conveyed. Of course, he should have used the plural 'are' instead of 'is' when he said 'and which *is* described as follows:' but that can make no difference."

"Again, we find that immediately following the third lot described in the deed is this expression, 'together with all and singular the improvemetns to *said* pieces or parcels of ground belonging.' The *'said* pieces or parcels of ground' are the three described and the same terms are used in the reference to the rents and also in the habendum clause."

This clear and convincing analysis of the deed in question would seem to leave little room for further discussion of its provisions, or doubt as to its proper construction. But counsel for the appellants earnestly contended in this Court that by reference to the deed of 1855 the grantors intended to include all of the property mentioned in that deed in the City of Cumberland, and he quotes and relies upon the statement in *Tiedeman on Real Property,* sec. 841, that, "If, instead of containing a description of the land conveyed, the deed refers to other deeds, the description of the latter deed will by such reference become a part of the former, and has the same effect as if it had been inserted in a subsequent deed."

If the language of the deed of 1876 had been "all those pieces or parcels of ground lying and being in the City of Cumberland, County of Allegany and State of Maryland, as conveyed by Thomas I. McKaig and Alpheus Beall, executors

of Asa Beall, deceased, to W. W. McKaig and John Beall, by deed bearing date on the 30th day of June, 1855," etc. without giving any other description of the property, we would have been forced to look to deed of 1855 for a description of the property conveyed. But the grant here is not of the pieces or parcels of ground conveyed by the deed of 1855, but of *"the hereinafter described pieces or parcels of ground*—as conveyed," etc., and, as said by the Court below, the words "as conveyed," etc., have reference to the "hereinafter described pieces or parcels of ground."

It is said in the same section of *Tiedeman on Real Property*: "But the reference to another deed will not be permitted to control the description actually contained in the subsequent deed, so as to exclude a lot or parcel of land described as part of the subject of conveyance, and not mentioned in the deed referred to," and it is stated in 13 *Cyc.* 633, that "where a deed contains a particular description of the property the fact that it contains a statement that the granted premises are the same that were conveyed to the grantor by a certain deed does not render it conclusive that it was the intention of the grantor to convey all the premises included in the latter deed."

In the case of *Smith* v. *Sweat*, 90 Me. 528, 38 Atl. 554, the Court stated: "It is too well settled to require the citation of authorities that a particular description of premises conveyed, when such particular description is definite and certain, will control a general reference to another deed as the source of title."

To the same effect is the case of *Whiting* v. *Dewey*, 15 Pick. 428, where the Court, in disposing of the contention that the particular description of the property was controlled by reference to the title of a prior owner, said: "The defendant's counsel have argued that nothing was granted but Benedict Dewey's right and title; and the words of description are relied on to maintain their argument. The words are, 'being all the same land which the said Benedict Dewey, deceased, lately owned in a hundred acre pitch of equalizing

land.' If these words were the only words of description
of the estate granted, the defendant's construction would be
well enough. But the language of the deed, before and after
the above cited clause, is entirely inconsistent with any such
construction. The grant is, 'of the *following* described tract
of land.' Then follow the above cited words, and then fol-
lows a particular description of the land granted, by metes
and bounds; and this particular description is decisive as
to the land intended to be granted, and to which the covenants
are to be referred. Very little stress is to be placed on words
of recital and general description, as to the extent of a con-
veyance, where there is a particular description of the lands
conveyed in clear and unambiguous language."

The cases referred to are directly in point. The deed we
are considering contains a clear and definite description of
the property conveyed, and there is nothing in the language
employed to indicate an intention to include in the grant any
property other than that particularly described.

In this State the cases of *Mims* v. *Armstrong, Cator &
Co.,* 31 Md. 87, and *Zittle* v. *Weller,* 63 Md. 190, may be
referred to as holding that the general terms of a grant may
be limited by a particular description of the property or the
subsequent terms of the deed. In the first of these cases
JUDGE ALVEY said: "Where the subject of the grant is first
described *generally,* and afterwards a particular description
is added, that will, if it can be reconciled to what precedes
it, restrain and limit the operation of the more general words
of description." But in the case at bar it is not necessary to
resort to the application of this rule, for the terms employed
expressly confine the grant to the interest of the grantors in
"the hereinafter pieces or parcels of ground," and the words
"as conveyed," etc., can only refer to *those* "pieces or parcels
of ground."

Counsel for the appellants also contends that the words of
the deed, "for and in consideration of the sum of nine hun-
dred and ninety-three dollars and fifty-nine cents the receipt
whereof in our respective distributive shares we do hereby

acknowledge," mean that the grantors were "selling their whole interest in the estate of John Beall," and that "the valuation of the whole estate divided by six, gave them the fractional sum of $993.59, as the deed expresses it, for their 'distributive shares.'" But the deed of 1855 included, as we have said, more than fourteen separate lots or parcels of land, one of which contained as much as 255 acres, and another 239½ acres, and the sums for which the several parcels were sold amounted to more than $13,000.00. If we assume that at the time of the execution of the deed of 1876 the heirs of Thomas Beall owned a one-sixth interest in the property mentioned in the deed of 1855, then the consideration in the deed of 1876 ($993.59) would not be their share of the value of that property, unless its value had greatly decreased. Moreover, if the grantors in the deed of 1876 intended to convey, and the grantee intended to purchase the interest of the grantors in all the lots or parcels of land mentioned in the deed of 1855, it is hard to understand why neither of the larger parcels were mentioned, and only three of the lots were described, particularly as the language of the deed limited the grant to the interest of the grantors in "the hereinafter described pieces or parcels of ground."

The obvious meaning intended to be conveyed by the words referred to, is that each of the grantors acknowledged the receipt of his or her *share* of the amount mentioned as the consideration for the deed, and they are not, in our judgment, susceptible of any other interpretation.

We concur in the view of the Court below that the deed of 1876 did not convey to Alpheus Beall, Sr., any interest in the four and one-fourth acre lot described in the deed of 1855, and will affirm the decree appealed from.

*Decree affirmed, with costs.*