LAZENBY ET AL. *v.* F. P. ASHER, JR. & SONS, INC.

[No. 33, September Term, 1972.]

*Decided November 10, 1972.*

*Motion for rehearing filed December 11, 1972; denied December 29, 1972, and opinion modified.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH and LEVINE, JJ.

*Richard N. Hambleton* for appellants.

*Ronald A. Baradel,* with whom were *Hartman & Crain* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellants, F. Marion Lazenby *et al.,* (Lazenby) seek reformation of a 1956 deed from appellee, F. P. Asher, Jr. & Sons, Inc. (Asher). Judge Sachse held in the Circuit Court for Anne Arundel County that they had not met their burden of proof. We agree.

The Lazenby group described themselves in the bill of complaint as "sole Stockholders, Principals, Officers, Directors and Trustees, surviving or otherwise of L. J. & P. Realty, Inc." (L. J. & P.), formerly a body corporate of the State of Maryland.

L. J. & P. bought land in Annapolis, a part of which was located on McGuckian and Park Avenues. The dispute here involves Lot 18 and part of Lots 3 and 17 of Block G on a plat of the McGuckian subdivision shown with hatch marks on the plat attached to this opinion which the reporter is directed to reproduce. The deed conveyed two separate parcels of land. It referred to the land as having been "surveyed by J. R. McCrone, Jr., Inc. Registered Engineers and Land Surveyors, in No-

vember, 1956." Two plats were attached to and recorded with the deed. Both are by McCrone with a November, 1956, date. The job order number of McCrone shown on the plat involving the second parcel corresponds with that appearing on the job order to which we shall later make reference. Both parcels of land were described in the deed by metes and bounds, courses and distances. The dispute here involves the second parcel. The plat here reproduced is a copy of one of the plats attached to the deed except that we have drawn in the eastern boundary lines of Lots 3 and 18, the extension of the back line of those lots, and the hatch marks. The description in the second parcel of the deed is exactly in accordance with the plat. That parcel is stated to be "all of Lots 4, 5, 6, 7, 14, 15 and 16 and part of Lots 3, 17, and 18, Block G as shown on the" plat of the McGuckian subdivision to which reference was made in the description. The back reference for the second parcel stated that it was part of one conveyance to Asher (which it was) "and all of the conveyance from George McGuckian et al to F. P. Asher, Jr. and Sons, Inc. . . . dated January 31, 1951 and recorded among the said Land Records in Liber J.H.H. 610, folio 347," which it was not since that conveyance included all of that part of Lot 3 here in dispute and all of Lots 17 and 18, portions of which are also in dispute.

It is the contention of the Lazenby group that L. J. & P. was to have conveyed to it all of Lots 3, 17, and 18. They seek the reformation of the deed accordingly. This action was filed in 1970.

We are advised that the background of this transaction is that three Annapolis professional and businessmen formed L. J. & P. to buy land then owned by Asher. They knew that a bank wished to buy a part of Asher's property and they knew that Asher desired to leave Annapolis. The ownership and management of Asher has changed since 1956.

Louis N. Phipps, one of the principals of L. J. & P., testified that the existence of this triangular strip was discovered back about 1964 or 1965, stating:

"It came directly to my attention when the American Legion had a buyer for their property and I believe Weidemeyer was their attorney . . . and the American Legion had a contract of sale to the buyer, this buyer found out after it was surveyed it didn't belong to the American Legion, it belonged to Asher or belonged to us because it was part of our property."

The American Legion post owned land immediately to the east of Lot 18.

There was a contract of sale between Asher and L. J. & P., but no one was able to produce the contract, nor did anyone relate precisely what the contract said. The survey was procured by David Jenkins, another appellant and a member of the Lazenby group. The job order of the surveyor was introduced into evidence. It read in part as follows:

"Location of Property: McGuckian Estates subdivision Block D; Block G 3 to 7, 14 to 18.

"Work to be done: Survey part of Prop. as instructed by Rullman (10/26/56 Survey all of Prop. and set monuments at all corners.) SPD of area for Co. Trust.

"Coordinate: Letter: City I; Number: 17; Price Quoted.

"Remarks: L. J. & P. Realty Co. is buying Asher & selling part."

Rullman was the attorney for L. J. & P. who prepared the deed. He did not testify.

The evidence of Lazenby included the fact that a realtor wrote a comprehensive letter of valuation as to the Asher land to one of the appellants which particularly described by words and by a sketch plat Asher's property which included the property here in dispute, that immediately prior to the deed from Asher to L. J. & P. a partial release of a mortgage on Asher's land in Anne Arundel County was executed which release included

the disputed land as well as that described in the deed, and that after the recordation of the deed in question the disputed area disappeared from the assessment and tax rolls of Anne Arundel County.

The chancellor found as a fact that at the time of the conveyance neither party knew that Asher owned the land, that L. J. & P. received the acreage it intended to receive in the transaction "regardless of whether or not it was all of the land owned by the seller," that the running of the diagonal line through Lots 3, 17, and 18 was intentional and not due to mistake, and that the intention was to convey part and not all of the lots.

Under Maryland Rule 886 when we review a case tried without a jury the judgment of the lower court is not to be set aside on the evidence unless clearly erroneous and due regard is to be given to the opportunity of the lower court to judge the credibility of the witnesses. In the ordinary civil action the burden of the plaintiff is to prove his case by a preponderance of the evidence. In a case such as this to reform a deed, however, the burden is even higher since "[n]ot only must a mutual mistake be shown, but the precise agreement which the parties intended but failed to express must be proven beyond a reasonable doubt." *Housing Equity Corporation v. Joyce*, 265 Md. 570, 581, 290 A. 2d 769 (1972), and cases there cited. In fact, Judge Mitchell for our predecessors in *Brockmeyer v. Norris*, 177 Md. 466, 473, 10 A. 2d 326 (1940), quoted 2 Pomeroy, *Equity Jurisprudence* § 859 at 1756-1757 (2d ed. 1892), which read the same as 3 Pomeroy, *Equity Jurisprudence*, § 859a (5th ed. Symons 1941). The latter work states:

> "The authorities all require that the parol evidence of the mistake and of the alleged modification must be most clear and convincing,—in the language of some judges, 'the strongest possible,'—or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt.

> Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error." (Emphasis the author's.) *Id.* 353-54.

To the same effect see the other cases and authorities cited by Judge Mitchell. Pomeroy goes on in the same section to state that although "it has been said that the evidence or the inferences to be drawn from the evidence must be clear, clear and satisfactory, clear and convincing, clear, convincing and unequivocal, full, clear, and decisive, strong and most satisfactory, and the like," which "such expressions obviously convey the same meaning," that "[t]he words 'beyond a reasonable doubt' or 'reasonable controversy,' used in some of the cases, are not to be interpreted in the sense that 'beyond a reasonable doubt' is employed in the criminal law. Such expressions form no rule of law to direct courts."

Lazenby here seizes upon the difference between the description and the "being" clause since the latter recited that the land being conveyed was *"all"* of the land described in a deed from McGuckian to Asher, when in fact all of that land was not embraced in the description.

Some of the rules for construction of deeds were summed up for the Court by Chief Judge Brune in *Adams v. Parater*, 206 Md. 224, 111 A. 2d 590 (1955):

> "[U]nless some positive rule of law is contravened, every part of a deed is to be given effect, if possible, and the intention of the parties must prevail." (Citing cases.) *Id.* at 231.
>
> \* \* \*
>
> "A construction of one general clause which would at once nullify its two immediate, clear and specific predecessors should be avoided unless it is inescapable." *Id.* at 233.
>
> \* \* \*
>
> "If, however, we entertained doubts as to the

proper construction of the deed and were forced to rely upon a technical rule of construction, we believe that the rule which, in case of repugnancy, gives effect to the first of two conflicting clauses in a deed, should be followed in this case. [Citing cases.] The most frequent application of this rule is in cases where the granting clause is held to prevail over the habendum. . . . The reason for the rule suggested by *Tiffany, Real Property,* 3rd. Ed., Sec. 979, seems clearly applicable and pertinent here—that it is 'to prevent the revocation by implication, by a later clause, of an earlier provision made in clear, explicit and unambiguous words, such a revocation being required to be in terms no less clear and explicit than those of the earlier provision.' " *Id.* at 236-37.

In *Cochrane v. Harris,* 118 Md. 295, 84 A. 499 (1912), the deed intended to convey certain land in Cumberland. The beginning of the granting clause recited that the grantors "ha[d] granted unto" the grantee "[a]ll our right, title and interest in and to the *hereinafter described* pieces or parcels of ground." (Trial court's emphasis in *Cochrane.*) After reference to a prior deed, then stating "and which is described as follows," the instrument proceeded to describe the land so conveyed which was less than all of the land in the prior deed. The question presented was whether the deed conveyed only the lots specifically described in it or whether it conveyed all of the land described in the prior deed. The trial judge saw significance in the language "hereinafter described pieces or parcels of ground," coupled with the fact that after the description the deed said "together with all and singular the improvements to *said* pieces or parcels of ground belonging," stating "[t]he '*said* pieces or parcels of ground' are the three described and the same terms are used in the reference to the rents and also in the habendum clause." (Emphasis that of the trial court.) In sustaining the judgment of the trial court

our predecessors referred to the case of *Smith v. Sweat,* 90 Me. 528, 38 A. 554 (1897). In that case the court said:

> "It is too well settled to require the citation of authorities that a particular description of premises conveyed, when such particular description is definite and certain, will control a general reference to another deed as the source of title.
>
> "So a clause in a deed, at the end of a particular description of the premises by metes and bounds, 'meaning and intending to convey the same premises conveyed to me,' etc., does not enlarge, or limit, the grant. [Citing cases.] The exception to this rule is where the particular description of land by metes and bounds is uncertain and impossible; then a general description in the same conveyance will govern." (Citing cases.) *Id* at 533.

Under the system prevailing in Maryland prior to the adoption of the Bond amendment to the Maryland Constitution in 1944, the trial judge in *Cochrane* in the Circuit Court for Allegany County was the Honorable Andrew Hunter Boyd, who was also at that time Chief Judge of this Court. Following the reasoning and logic of Chief Judge Boyd in that case we note that in this deed the grantor purported to convey "[a]ll those lots or parcels of ground . . . *described* as follows" and the "to have and to hold" clause referred to "the *above described* property." (Emphasis added in each instance.)

On this record we cannot say that the trial judge clearly erred when he concluded that neither grantor nor grantee knew that the grantor owned the disputed land here. Here the land not only was precisely described by metes and bounds, courses and distances, but a plat from a recent survey, referred to in the deed, was attached. It corresponded exactly with the deed. Surely, the representatives of the purchaser must have leafed through the deed. Had they done so it would have been

obvious even to one not skilled in the matter of plats and conveyances that something less than all of Lots 3, 17, and 18 was being conveyed. Moreover, if the parties were at all familiar with the "lay of the land" which they were buying, it would be obvious from the plat that the easternmost line was running at an angle different from that which might have been expected had they examined the property in the field prior to purchase, and much different from that shown upon a copy of the recorded McGuckian plat which was appended to an appraisal obtained by the purchaser. Therefore, bearing in mind the burden of the plaintiff in this sort of case to prove certainty of error, we find no error on the part of the chancellor when he said:

> "But looking at this deed you could look at it forever and it would be, appear to be perfectly all right. The only difference is when you went back to the McGuckian deed you found out that he owned all of those lots instead of parts of those three lots. So the instrument certainly on that basis definitely is clear and under the circumstances to me there was no intention of the parties to sell more or the buyers to buy more than the seller actually had. And again I feel that from all of the testimony, and I must restate the fact, that as far as I could see in determining from the testimony, it appeared and it's my belief that the seller did not know that he owned anymore than he conveyed and the buyer didn't know that the seller owned more than the buyer was acquiring. And under those circumstances the buyer is not entitled to something that he never intended to buy and the seller never intended to sell."

There was a petition for rehearing to which was attached a letter from Francis P. Asher, Jr., "President and majority stockholder of F. P. Asher, Jr. & Sons, Inc." at the time of the 1956 conveyance, not called as

a witness at the trial, in which he stated "the company contracted to sell all of the property," that it was his concern to divest his company of all of the property, and that when he sold the controlling interest in Asher "none of [his] company's former holdings in Annapolis were included or intended to be included in the sale . . . as [he] had previously conveyed the same as [he] ha[d] indicated above." The motion for rehearing was denied and it is claimed here that the chancellor erred in denying that petition. The matter is not before us because the appeal entered was "from the decree of the Honorable George Sachse of [the Circuit Court for Anne Arundel County] dated October 7, 1971." Were the matter properly before us, in order for Lazenby to be successful it would be necessary to show injustice to Lazenby or an abuse of discretion by the trial court. *Austin v. Austin,* 234 Md. 393, 394, 199 A. 2d 380 (1964), and *Holcomb v. Fender,* 203 Md. 480, 487, 101 A. 2d 814 (1954). The tender of the statement from Mr. Asher must be placed in the context of a motion for a new trial in a law case on the ground of newly discovered evidence. 2 Poe, *Pleading and Practice* § 338, at 323 (5th ed. Tiffany 1925), states on that subject, "and especially must it be made to appear that the alleged new evidence could not have been discovered in time for the trial for the exercise of reasonable care and diligence." We see no error.

*Decree affirmed; appellants to pay the costs.*