665 A.2d 1062

**URBAN SITE VENTURE II LIMITED PARTNERSHIP et al.**

**v.**

**LEVERING ASSOCIATES LIMITED PARTNERSHIP.**

**No. 43, Sept. Term, 1995.**

Court of Appeals of Maryland.

Oct. 13, 1995.

224

Lee H. Ogburn (Perry F. Sekus, Kramon & Graham, P.A., on brief), Baltimore, for Petitioner.

David S. Cordish (Paul J. Burt, Cordish & Cordish, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

The issue in this case is whether the Court of Special Appeals erred in requiring that, in a building encroachment case, "compelling evidence" is necessary to establish innocent mistake under the doctrine of comparative hardship. We hold that a defendant in an encroachment case who seeks to avoid injunctive relief through the doctrine of comparative hardship must prove innocent mistake by a preponderance of the evidence.

## I

Levering Associates Limited Partnership ("Levering"), owns an office building and concrete driveway located at 6–14 South Gay Street in Baltimore City. Urban Site Venture II Limited Partnership and LaSalle Partners Development II Limited Partnership (collectively "Urban Site"), planned to build a high-rise parking garage on the parcel immediately south of Levering's and hired Triangle Surveys, Inc. ("Trian-

gle") to survey the site and locate the building on the lot. Urban Site and Triangle had access to a 1987 survey of the site by S.J. Martenet & Company ("Martenet"), but Triangle decided not to rely on the 1987 Martenet survey because it contained errors. Triangle surveyed the site and staked out the building and Urban Site began construction in May of 1990.

On June 15, 1990, when the garage was already three stories tall on the side adjacent to Levering's property, Levering filed suit in the Circuit Court for Baltimore City alleging a permanent encroachment and seeking an injunction and damages. Levering then hired Greenhorne & O'Mara, Inc. ("Greenhorne") to survey the site and determine whether the garage encroached on its property. The Greenhorne survey determined that the garage encroached in a triangular area, from zero to 1.5 inches over nine feet.

After receiving the Greenhorne survey, Levering advised Urban Site's contractor, Omni Construction, Inc. ("Omni") that it believed the north wall of the garage encroached on its property. The construction supervisor immediately halted construction. Urban Site had Triangle double-check its survey. Then Omni verified the placement of the building on the lot and checked the Triangle survey's accuracy with the Baltimore City surveyor's office. Based on this investigation, Urban Site determined that the garage did not encroach on Levering's property and resumed construction.

After a three-day trial, Judge John N. Prevas held that the garage encroached a total of 1.3 square feet on Levering's property. He determined that the market value of the sliver of land encroached upon was $200 and the cost of removing the encroachment would be approximately $500,000. He also found that the encroachment did not impede Levering's use of its property or future development rights. Accordingly, Judge Prevas denied Levering's request for a permanent injunction under the doctrine of comparative hardship and awarded it $14,801 in damages.

Levering appealed to the Court of Special Appeals and Urban Site cross-appealed. The Court of Special Appeals, in an unreported opinion, upheld the circuit court's finding that there was an encroachment, but vacated the judgment and remanded, holding, "[t]he trial court erred in balancing the equities of the situation without a prior determination of whether the Builders had encroached upon Levering's property by innocent mistake."

On remand, Judge Prevas found that the encroachment resulted from an innocent mistake and again refused to issue a permanent injunction. He also reduced the damages award to $302, consistent with a directive from the Court of Special Appeals.

Levering again appealed to the Court of Special Appeals which, in an unreported opinion, reversed the circuit court's ruling, granted injunctive relief, and stated:

> We hold that, when an encroacher's own survey information (regardless of whether he professes knowledge of his own information) initially indicates that his structure will encroach, and when an adjoining landowner notifies the encroacher of the encroachment, supporting that notification with a survey that is consistent with the encroacher's original *correct* survey, the encroacher cannot thereafter claim innocence by procuring a third survey of that property to show no encroachment.

We granted Urban Site's petition for certiorari to ascertain whether, as it claimed, the Court of Special Appeals erred in holding Urban Site to a "compelling evidence" burden in proving their innocence.

## II

Levering maintains that the Court of Special Appeals did not establish a "compelling evidence" burden of proof. The language at issue in the Court of Special Appeals' opinion is as follows:

> The concept of the sanctity of private property ownership demands no less than severe and extensive scrutiny of the

*innocence* of the mistake, when encroachments occur; the ownership of one's property should not be divested except upon the most compelling evidence of innocence. *Compelling* evidence of innocence is non-extant in this case.

(emphasis in original). We agree with Urban Site that the Court of Special Appeals established a "compelling evidence" burden of proof and that it erred in so doing.

■ Maryland courts recognize only three standards of proof: "[t]he lowest standard requires proof by a 'preponderance' of the evidence; the highest standard demands proof 'beyond a reasonable doubt;' an intermediate standard calls for proof that is 'clear and convincing.'" *Wills v. State,* 329 Md. 370, 373–74, 620 A.2d 295 (1993). In most civil actions, the party having the burden of proof on an issue must prove his or her contention by a fair preponderance of the evidence. *See, e.g., Lazenby v. F.P. Asher, Jr. & Sons,* 266 Md. 679, 683, 296 A.2d 699 (1972); *Carter v. Carter,* 139 Md. 265, 267–68, 114 A. 902 (1921); *Ocean Plaza Joint Ven. v. Crouse Constr.,* 62 Md.App. 435, 447, 490 A.2d 252 (1985). In an encroachment case, the party seeking to avoid the issuance of a permanent injunction bears the burden of proving its innocence. *Griffin v. Red Run Lodge,* 610 F.2d 1198 (4th Cir. 1979); *see also Operations Research Inc. v. Davidson & Talbird, Inc.,* 241 Md. 550, 217 A.2d 375 (1966); *Noffsinger v. Noffsinger,* 95 Md.App. 265, 620 A.2d 415, 422 (1993); *Daniels v. Sup't, Clifton T. Perkins State Hos.,* 34 Md.App. 173, 366 A.2d 1064, 1069 (1976); *cf. Ewachiw v. Director of Finance of Baltimore,* 70 Md.App. 58, 519 A.2d 1327 (1987); *Keeney v. Prince George's Cty. Dept. of Soc. Serv.,* 43 Md.App. 688, 406 A.2d 955 (1979); *Plummer v. Waskey,* 34 Md.App. 470, 368 A.2d 478 (1977); Maryland State Bar Association, *Maryland Civil Pattern Jury Instructions* § 1:7a (3d ed.1993 & Supp. 1995).

A heightened burden of proof is imposed in certain circumstances. *E.g., Mack v. Mack,* 329 Md. 188, 208, 618 A.2d 744 (1993) (termination of life support); *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992) (punitive damages);

*Board of Trustees v. City of Baltimore,* 317 Md. 72, 116, 562 A.2d 720 (1989) (federal preemption); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 426, 550 A.2d 1150 (1988) (attorney grievance proceedings); *Everett v. Baltimore Gas & Elec. Co.,* 307 Md. 286, 300, 513 A.2d 882 (1986) (fraud); *Lazenby, supra,* 266 Md. at 683, 296 A.2d 699 (reformation of deed). We have never imposed a heightened burden of proof, however, on the defendant in an encroachment case to prove innocent mistake. *See, e.g., Amabile v. Winkles,* 276 Md. 234, 347 A.2d 212 (1975); *Chevy Chase Village v. Jaggers,* 261 Md. 309, 275 A.2d 167 (1971); *Dundalk Holding Company v. Easter,* 215 Md. 549, 137 A.2d 667 (1958), *cert. denied,* 358 U.S. 821, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958), *reh'g denied,* 358 U.S. 901, 79 S.Ct. 219, 3 L.Ed.2d 151 (1958); *Lichtenberg v. Sachs,* 213 Md. 147, 131 A.2d 264 (1957). The Court of Special Appeals based its imposition of a heightened burden of proof on "the sanctity of private property." This Court, however, has consistently applied the preponderance of the evidence standard in cases involving private property ownership. *See, e.g., Dreisonstok v. Dworman Building Corp.,* 264 Md. 50, 58, 284 A.2d 400 (1971) (ejectment); *Stottlemyer v. Kline,* 255 Md. 635, 638, 259 A.2d 52 (1969) (trespass); *Miceli v. Foley,* 83 Md.App. 541, 552, 575 A.2d 1249 (1990) (adverse possession); *Ocean Plaza, supra,* 62 Md.App. 435, 490 A.2d 252; *cf. Stuart v. Johnson,* 181 Md. 145, 147, 28 A.2d 837 (1942) (trespass and adverse possession). We see no reason to impose a heightened burden of proof on Urban Site to prove the innocence of its mistake in this case. Accordingly, we hold that the Court of Special Appeals was wrong in imposing a "compelling evidence" burden of proof and that the trial judge did not err in finding that Urban Site proved innocent mistake by a preponderance of the evidence.

### III

Both this Court and the Court of Special Appeals, when reviewing a case tried without a jury, must "review the case on both the law and the evidence." Maryland Rule 8–131(c) (1995 Repl.Vol.). The Court must "not set aside the

judgment of the trial court on the evidence unless clearly erroneous," and must "give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* In addition, we must consider the evidence in the light most favorable to the prevailing party, *e.g., Geo. Bert. Cropper, Inc. v. Wisterco,* 284 Md. 601, 620, 399 A.2d 585 (1979), and decide not whether the trial judge's conclusions of fact were correct, but only whether they were supported by a preponderance of the evidence. *E.g., State Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 305, 236 A.2d 282 (1967).

### · IV

 The preferred remedy for encroachment is an injunction ordering removal of the encroaching structure. In *Lichtenberg, supra,* 213 Md. 147, 131 A.2d 264, a landowner built a house over his neighbor's right of way and provided comparable access and money damages. We there noted that allowing a landowner to relocate a right of way and pay damages "amounts to a request that private property be taken for private use. No court has authority to compel the owner of land to surrender his property to another person, lacking the power of eminent domain, in exchange for a sum of money. . . ." *Id.* at 152, 131 A.2d 264. Thus, courts generally grant injunctive relief when an encroachment is found.

 In *Easter v. Dundalk Holding Co.,* 199 Md. 303, 86 A.2d 404 (1952), we established an exception to the general rule. Dundalk built a movie theater encroaching on Easter's land. *Id.* at 304, 86 A.2d 404. Easter obtained a judgment for ejectment that was affirmed by this Court in 1950. In 1952, we refused to enjoin enforcement of the ejectment order. *Id.* We recognized, however, that there might be circumstances in which a court would refuse to order the removal of an encroaching structure; we said:

> [I]t is an accepted rule that where a landowner, by innocent mistake, erects a building which encroaches on adjoining land, and an injunction is sought by the owner of the land encroached upon, the court will balance the benefit of an

injunction to the complainant against the inconvenience and damage to the defendant, and where the occupation does no damage to the complainant except the mere occupancy of a comparatively insignificant part of his lot, or the building does not interfere with the value or use of the rest of his lot, the court may decline to order the removal of the building and leave the adjoining landowner to his remedy at law. *Hasselbring v. Koepke,* 263 Mich. 466, 248 N.W. 869, 873, 93 A.L.R. 1170 [ (1933) ]; *Mary Jane Stevens Co. v. First National Building Co.,* 89 Utah 456, 57 P.2d 1099, 1126 [ (1936) ].

*Id.* 199 Md. at 305, 86 A.2d 404.[1]

Easter filed a petition to require Dundalk to remove the building in 1956. The court granted the injunction, but this Court reversed, applying the innocent mistake rule from our 1952 opinion. *Dundalk Holding Company, supra,* 215 Md. 549, 137 A.2d 667. We first held that the trial court did not err in finding that Dundalk's mistake was innocent "and resulted from reliance on the work of an expert who later was thought by a jury to be wrong." *Id.* at 557, 137 A.2d 667. We then upheld the trial court's application of the doctrine of comparative hardship and refused to order Dundalk to tear down its wall because doing so "would benefit Easter but slightly and would penalize Dundalk heavily." *Id.* In the case now before us, the Court of Special Appeals was correct in directing Judge Prevas to first find that the encroachment resulted from an innocent mistake before balancing the equities.[2]

Levering contends that the trial court failed to make a separate finding of innocence before applying the doctrine of comparative hardship. The trial court ruled as follows:

---

**1.** The Court said that in this case Dundalk was seeking to enjoin enforcement of a prior-granted legal remedy and thus the comparative hardship doctrine was not directly involved. *Id.* at 306, 86 A.2d 404.

**2.** In *Chevy Chase Village v. Jaggers,* 261 Md. 309, 275 A.2d 167 (1971) we said "[i]nnocent mistake on the part of the party to be enjoined is a factor to be considered in applying the doctrine [of comparative hardship]." *Id.* at 320, 275 A.2d 167.

I find that the peculiar combination of circumstances here result in an innocent mistake that could be viewed from some points of view or in some contexts as negligent encroachment or trespass, but under the *totality of the circumstances* is the kind of innocent mistake that the cases and the commentators were contemplating when they created the evolution of the comparative hardship doctrine.

(emphasis added). Levering points out that Judge Prevas later used "totality of the circumstances" to refer to his preferred approach of treating innocence merely as a factor. Nonetheless, we disagree with Levering's conclusion. Judge Prevas went to great lengths to elucidate the meaning of "innocence" and to make a separate finding of Urban Site's innocence. His reference to "totality of the circumstances" appears in context to refer to nothing more than all of the facts that led him to conclude that Urban Site's mistake was innocent.

Manifestly, finding the existence of an encroachment does not preclude finding that the encroachment was innocent. In *Bradley v. Cornwall*, 203 Md. 28, 98 A.2d 280 (1953), we determined that Bradley had constructed a sea wall on land he did not own, but we refused to reform the deeds and instead awarded damages. We held that Bradley's encroachment did not necessarily indicate bad faith, and said, "imprudence is not the equivalent of bad faith." *Id.* at 38–39, 98 A.2d 280; *see also Dundalk, supra,* 215 Md. 549, 137 A.2d 667; *Stroup v. Codo,* 65 Ill.App.2d 396, 212 N.E.2d 518, 520 (1965). Thus, Judge Prevas' finding that Urban Site had encroached did not bear on the issue of their innocence.

"Innocent" is defined as "acting in good faith," and an "innocent trespasser" is "one who enters another's land unlawfully, but . . . in the honest, reasonable belief of his own right to do so. . . ." *Black's Law Dictionary* 788 (6th Ed.1990). The United States Court of Appeals for the Fourth Circuit, applying Maryland law, focused on good faith and reasonableness when it defined "innocence" in *Griffin, supra,* 610 F.2d 1198. In that case, the Red Run Lodge built tennis courts over the Griffins' right of way through the Lodge's property.

The District Court denied the Griffins' petition for injunctive relief because it found the Lodge's action was not "willful." *Id.* at 1200. The circuit court vacated the lower court's judgment and remanded with guidance about the meaning of "innocence":

> To establish "innocence" defendant would have to show it reasonably had no notice of the Griffins' rights, or that, with knowledge of those rights, it made a good faith effort to locate an improved road exactly on the path of the easement, but strayed from that path because of a good faith error by an independent surveyor as to the boundaries of the easement.

*Id.* at 1202–03

Where it is found that an encroachment was not innocent, the defendants have exhibited a lack of good faith. Usually, the defendants had notice of the location of the plaintiff's easement and encroached despite such knowledge. *E.g., Amabile, supra,* 276 Md. 234, 347 A.2d 212 (constructive and actual notice); *Columbia Hills v. Mercantile–Safe Deposit & Trust Co.,* 231 Md. 379, 190 A.2d 635 (1963) (actual notice); *Hanley v. Stulman,* 216 Md. 461, 141 A.2d 167 (1958) (notice from prior declaration); *Lichtenberg, supra,* 213 Md. 147, 131 A.2d 264 (notice from prior injunction); *cf. Chevy Chase Village, supra* 261 Md. 309, 275 A.2d 167; *Grubb v. Guilford Ass'n,* 228 Md. 135, 178 A.2d 886 (1962). The Court of Special Appeals implicitly found that Urban Site knew the garage would encroach before they began construction and, therefore, the encroachment was not innocent.

In contrast, the circuit court, as finder of fact, found that Urban Site did not know the exact location of the property line, hired Triangle to make that determination, and relied on Triangle's work reasonably and in good faith.[3] The

---

3. Judge Prevas found that Triangle had access to the 1987 Martenet survey, which he ultimately found to be correct, before it performed its survey. He also found that Triangle chose not to rely on the Martenet survey because it contained errors and that Triangle's refusal to use the Martenet survey did not defeat Urban Site's innocence. Judge Prevas

situation described by the circuit court is similar to that in *Dundalk Holding Company* where Dundalk hired a leading surveyor and relied on the surveyor's work in constructing the encroaching movie theater. We upheld the trial court's finding that Dundalk's mistake under those circumstances was innocent. *Dundalk Holding Company, supra,* 215 Md. at 557, 137 A.2d 667; *see also Amabile, supra,* 276 Md. at 243, 347 A.2d 212 (encroachment would have been innocent if surveyors had erroneously located the easement).

In June of 1990, when Urban Site was made aware of Levering's objection, it immediately stopped work and rechecked the survey and placement of the building on the lot. We agree with the circuit court that these actions demonstrate Urban Site's good faith and "appreciable caution." *Stroup, supra,* 212 N.E.2d at 520. We do not think it was necessary at that point for Urban Site to stop construction and await the outcome of the pending litigation.

The factual findings of the circuit court in this case were not clearly erroneous. Accordingly, we reverse the judgment of the Court of Special Appeals and hold that where an encroachment results from reasonable, good faith reliance on the mistaken work of competent surveyors, the encroachment is innocent.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT FOR ENTRY OF JUDGMENT CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY LEVERING.*

---

found that Urban Site proved by a preponderance of the evidence that Triangle's decision was reasonable and made in good faith. That finding was not clearly erroneous.