## BARBARA ADAMS BERNHARDT *v.* LUTHERAN SOCIAL SERVICES OF THE NATIONAL CAPITAL AREA, INC. ET AL.

[No. 915, September Term, 1977.]

*Decided May 11, 1978.*

The cause was argued before MOYLAN, MOORE and MacDANIEL, JJ.

*Frank M. Kratovil,* with whom was *Lois C. Rose* on the brief, for appellant.

*Robert L. Pillote* for appellees.

MOORE, J., delivered the opinion of the Court.

This appeal arises from an Order of the Circuit Court for Montgomery County (Fairbanks, J.) denying a petition for the

adoption of a biracial, Black-Chicano, illegitimate female infant, born on September 10, 1975 in Dallas, Texas. The parent-child relationship between the natural mother and the unknown father and the child was judicially terminated by decree of the Juvenile Court of Dallas County, Texas on February 6, 1976. The petitioner, appellant here, is a 41-year old, divorced woman, the biological parent of one child, age 6, and adoptive parent of another child, age 5, both of whom are in her custody. The infant who is the subject of these proceedings has been in the custody of the petitioner since March 11, 1976, when she was approximately six months old, pursuant to a "Placement Agreement" with the Dallas County Child Welfare Unit of the State Department of Public Welfare and Lutheran Social Services of the National Capital Area, Inc., a licensed child-placing agency in the District of Columbia, intervenors herein.

The fundamental issue in the case was succinctly phrased by the chancellor who stated in the course of a comprehensive written opinion:

> "Respondent Dallas County Child Welfare Unit, pursuant to the Texas court decree of July 1976, has full parental rights and control over Deborah. The consent of that agency to the adoption is requisite and no adoption can be decreed without such consent unless the Court should find that the consent is being withheld contrary to the best interests of the child. (Article 16, Section 74, Annotated Code of Maryland, 1957 Ed., 1973 Repl. Vol.). As the record discloses, respondent Dallas County has declined to consent to this adoption. Based on all of the testimony and other evidence in this case, the Court finds that respondent Dallas County Child Welfare Unit's refusal to consent has been properly withheld and is not contrary to the best interests of the child."

It is appellant's position that the lower court was clearly erroneous in "certain factual findings," that it "committed several errors as a matter of law," and that its decision

"showed a clear abuse of discretion in several instances." We find these contentions without merit and shall affirm.

## I

The "Decree of Termination" in proceedings relating to "Baby Girl, born September 10, 1975," before the Juvenile Court of Dallas County, Texas, appointed the Director of the Dallas County Child Welfare Unit as "managing conservator" of the child, with the following "rights, privileges, duties and powers":

"(1) the right to have physical possession of the child and to establish its legal domicile;

"(2) the duty of care, control, protection, moral and religious training, and reasonable discipline of the child;

"(3) the duty to provide the child with clothing, food, shelter, and education;

"(4) the power to consent to marriage, to enlistment in the armed forces of the United States, and to medical, psychiatric and surgical treatment; .

"(5) the power to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

"(6) the power to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child; and

"(7) *the power to consent to the adoption of the child and to make any other decision concerning the child that a parent could make.*" (Emphasis added.)

Appellant, Barbara Adams Bernhardt, and her then husband, Norman Bernhardt, had made application in January 1973 with Lutheran Social Services of the National Capital Area for the placement of a child for adoption. They had been married in Belgrade, Yugoslavia on July 17, 1971

and had one child, David, born on January 15, 1972. As a result of the 1973 application, they received from Lutheran Social Services a black child, Daniel, who was born on May 23, 1973, and whom they adopted.[1]

Mr. and Mrs. Bernhardt again made application to Lutheran Social Services on May 28, 1974. The infant, "Baby Girl," then six months old, was placed with them on March 11, 1976, and named Deborah Annette by them. The Placement Agreement was executed by Barbara and Norman Bernhardt,[2] and extended not only to Lutheran Social Services as placement agent, but also to Dallas County Child Welfare as conservator. Under the Agreement, the Bernhardts assumed "complete financial responsibility for the child's care with the intention of adoption." They also agreed not to "begin court proceedings for the adoption without the approval of Dallas County Child Welfare and Lutheran Social Services." It was expressly stipulated that such approval would not be forthcoming sooner than six months after placement and that "the agency has the right to remove the child at any time prior to adoption should the agency consider it to be in the child's best interests."

A social worker at Lutheran Social Services (and an appellee herein), Anita Greenberg, made a visit to the Bernhardt home in Takoma Park on May 11, 1976 and found conditions satisfactory and the custodial care of Deborah proper. A month and one-half later, however, Miss Greenberg learned, in an interview with Norman Bernhardt, arranged at his request, that the couple had been having marital difficulties for a significant period of time and had, in fact, been separated for a number of months. His visit to Miss Greenberg had been recommended by Monica Friedman, a marriage counselor in the TESS Neighborhood Service Center in Silver Spring, whom the Bernhardts had consulted. Subsequently, on July 9, 1976, Miss Greenberg called in Mrs. Bernhardt for an interview and thereafter reopened her

---

1. The Bernhardts and their natural child are Caucasian.

2. As indicated *infra*, the Bernhardts had been experiencing marital difficulties and, at the time of placement, were separated. They have since been divorced.

investigation of the background of the Bernhardts and their suitability as adopting parents for Deborah. The Dallas County Child Welfare Unit was informed of her action.

In late October 1976, Miss Greenberg sent a second report to Dallas, with the recommendation that Deborah be removed from the Bernhardt home. On November 21, 1976, the Program Director of the Dallas County Child Welfare Unit executed, under oath, a formal designation of Lutheran Social Services as agent to act "In the Interest of Deborah Annette Bernhardt, A Child." In it, the "immediate removal" of the child from the Bernhardt home was requested "in the best interest of the child and for the welfare of the child." It was also stated: "The Dallas County Child Welfare Unit has no intentions whatsoever to consent to the Adoption of this child by the Bernhardt family."

On December 2, 1976, the Bernhardts were summoned to Lutheran's office in Washington and informed of the decision to remove Deborah from them. When the child was not returned in the time specified, the Dallas County Child Welfare Unit and Lutheran Social Services filed, on December 6, 1976, a petition against Barbara and Norman Bernhardt, seeking custody of Deborah and other relief. On the same day, Barbara Bernhardt alone [3] retaliated by filing a petition against the Dallas County unit and Lutheran Social Services, seeking custody of Deborah and a separate petition for the adoption of Deborah. An *ex parte* order was then issued, enjoining the agencies from removing the child from the jurisdiction of the court.

The two custody actions were consolidated but hearings thereon were postponed pending the outcome of Mrs. Bernhardt's petition for adoption. At two days of hearings in the adoption case, appellant presented nine lay witnesses and four expert witnesses, all of whom testified that Deborah's best interests would be served by the adoption. The respondents offered the testimony of the social worker

---

3. The Bernhardts were then in matrimonial litigation, Barbara having filed suit for a divorce *a mensa* on July 23, 1976 on grounds of desertion. This was the subject of a supplemental bill for *a vinculo* relief, filed on December 30, 1976.

employed by Dallas County Child Welfare who had arranged the placement and had transported the infant from Texas, as well as that of the marriage counselor, Monica Friedman, and Miss Greenberg.

As previously stated, Judge Fairbanks denied the petition but, upon motion for stay of execution, he ordered that Deborah be permitted to remain in Mrs. Bernhardt's custody pending this appeal.

## II

It is essential that this case be kept in true perspective, and that careful attention be directed to the precise issue before the chancellor.

This is not simply a custody suit nor is it a contested adoption proceeding between adoptive and natural parents. Rather, it is a contested petition for adoption by an unmarried individual with whom a contractual placement has been made, and the respondents (opponents) include the "managing conservator" with the power, legislatively mandated and judicially decreed, to consent to the adoption of the child, and the social service agency charged with local supervision of the placement. Furthermore, this case must be viewed against the backdrop of the Interstate Compact on the Placement of Children, Md. Ann. Code, Art. 16 § 208 *et seq.* (1957, 1973 Repl. Vol., 1977 Cum. Supp.),[4] the purpose and policy of which are specifically declared in these words in § 209:

> "It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children to the end that:

---

[4] This Compact is entered into by Maryland with all States legally joining in the Compact substantially in the form outlined in § 208. It applies between Texas and Maryland. *See* Tex. Rev. Civ. Stat. Ann. art. 695a-2 (Vernon, 1978 Supp.).

It is to be noted that § 212A of the Compact provides that the "sending agency" (here, the Dallas County Child Welfare Unit) shall "retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted. . . . Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law."

(a) Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care.

(b) The appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child.

(c) The proper authorities of the state from which the placement is made may obtain the most complete information on the basis of which to evaluate a projected placement before it is made.

(d) Appropriate jurisdictional arrangements for the care of children will be promoted."

It must also be recognized that the issue presented is not whether Mrs. Bernhardt is a fit and proper custodian of Deborah. More precisely, it is whether, in light of the requirements of Md. Ann. Code, Art. 16 § 74 (1957, 1973 Repl. Vol.) and Md. Rule D73, the required consent to the adoption by the Dallas County Child Welfare Unit was "withheld contrary to the best interests of the child." [5] *See Brendoff v. Titus,* 22 Md. App. 412, 323 A. 2d 612 (1974).

Finally, it must be noted that the scope of our review of the trial court's determination of this central question is limited to whether the trial judge abused his discretion or whether his findings of fact were clearly erroneous. *Davis v. Davis,* 280 Md. 119, 372 A. 2d 231 (1977); *Ross v. Hoffman,* 280 Md. 172, 372 A. 2d 582 (1977); *Montgomery County Department of Social Services v. Sanders,* 38 Md. App. 406, 418, 381 A. 2d 1154, 1162 (1978). The rule of the cited cases, applied therein to custody proceedings, is equally applicable to adoption

---

5. Under Art. 16 § 74 (g) and Md. Rule D73, a written statement of consent by the Dallas County Child Welfare Unit was required; this was not submitted. Under the prefatory language of § 74 and the Rule, however, the court had authority to grant the petition if, after a hearing, it found such consent was withheld contrary to the best interests of the child.

cases. *See, e.g., Nutwell v. Prince George's County Department of Social Services,* 21 Md. App. 100, 107, 318 A. 2d 563, 567 (1974). The observations in *Sanders* are also apposite:

> "The chancellor's findings of fact are to be given great weight since he has the parties before him and has 'the best opportunity to observe their temper, temperament and demeanor, and so decide what would be for the child's best interest. . . .' There can be very little constructive or useful precedent on the subject of custody determinations, because each case must depend upon its unique fact pattern. . . . This Court may not set aside the factual findings of the chancellor unless they are clearly erroneous, . . . and absent a clear showing of abuse of discretion, the decision of the trial judge in a custody case will not be reversed." 38 Md. App. at 418-19, 381 A. 2d at 1162. (Citations omitted.)

These guiding principles are to be applied to the instant case in the context of a record of documentary and testimonial evidence which reveals, *inter alia,* that:

1) Although the appellant and her husband had jointly applied for placement, they had been separated for at least five months when the placement was actually made.[6]

2) Neither the out-of-state nor the local agency was apprised of the marital difficulties between the Bernhardts by the appellant. On the contrary, there is evidence that she suppressed this information. Although the parties were separated at the time of a home visit following the placement, appellant told the social worker that Mr. Bernhardt was absent from the home because of his employment.

3) In the 1973 and 1974 applications for child placement to Lutheran Social Services, appellant represented that she had not been previously married. In fact, she had been twice married (for 1 year and 6 years, respectively) and twice

---

6. At the time of oral argument on this appeal, Mrs. Bernhardt had obtained a final decree of divorce *a vinculo.* Her former husband did not testify in the proceedings below.

divorced. In each instance, the divorce had been granted to her then spouse on grounds of appellant's desertion. Under questioning by the court, appellant affirmed that the application form required disclosure of prior marriages and testified: "I answered it falsely."

4) Sharp discrepancies existed in the records and testimony with respect to appellant's financial circumstances. Her applications to the agency in Washington represented that her husband's income was $8,000 per year. Tax returns for 1973 and 1974, however, disclosed taxable income of $3,255.92 and $1,994.15, respectively. Appellant's financial statement in her divorce action against Mr. Bernhardt showed a total net income of $18 per month but, in the proceedings below, appellant testified to income in excess of $1200, including compensation for babysitting in the sum of $420 per month, and ultimately stated that her income and that of her husband "ha[d] always been a big confused mess." [7]

Relevant evidence was also produced below in the form of recommendations from the Dallas County Child Welfare Unit and the Lutheran Social Services organization that the child not remain in Mrs. Bernhardt's custody. The representative of the Texas agency in his testimony below stated that he was the social worker who was in consultation with the child's biological mother, and that she desired the child to have a home with both a mother and a father; and that with regard to this child, he would not approve a single parent placement. The "withholding and calculated falsifying" of information was also a primary concern of Dallas County. The agency perceived in appellant's conduct a disposition to use "deceptive methods to gain whatever goals there may be," and concluded that "to bring a child into a family that is dissolving . . . and put further stress on that family and stress on the child" would be improper.

The recommendation to the Texas agency by Lutheran Social Services that the child be withdrawn was based upon

---

7. To this statement, the court responded: "That does not give me a whole lot of confidence in how you are going to conduct your affairs in the future." In the chancellor's written opinion, he concluded: "Either the Bernhardts have been less than candid in disclosing their true financial picture or they are badly overextended."

"repeated instances of deceit in contacts between the Bernhardts and the agency...." It was felt that such behavior "implied unconcern for the children in the agency care and therefore for this child ... [whom] they had taken into their home for the purpose of adoption." The witness, Miss Greenberg, told the chancellor that this attitude indicated "a level of morality not conducive to responsible parenting."

The marriage consultant seen by appellant and her husband further disclosed that there had been both "resentment and hostility" in the marriage of the Bernhardts for a long period of time and, as stated in a report to the court below from Lutheran Social Services, "[s]he described Mrs. Bernhardt as being extraordinarily manipulative and amoral...." The marriage counselor cautioned the placement agency not to believe what Mrs. Bernhardt would relate about the family situation because she felt appellant "would do whatever she could to keep the child, Deborah."

In the chancellor's careful analysis of the evidence he concluded that the best interests of the child would be served by "denial of the adoption petition and the removal of the child from the home for placement in a better and healthier environment." On the basis of our review of the record, we cannot conclude that the chancellor's findings of fact were "clearly erroneous" or, indeed, that they were erroneous at all. Furthermore, we find no basis for appellant's contention that the chancellor committed any abuse of discretion in his resolution of the ultimate question, namely, whether the agency's consent was withheld contrary to the best interests of the child.

Additional support for the chancellor's conclusion may be found in appellant's dishonoring the placement agreement, which she and her husband executed at the time the child, Deborah, was delivered to them. She expressly covenanted therein not to begin court proceedings for the adoption of the child without the prior approval of both agencies and affirmed her understanding that the agencies had the right to remove the child at any time prior to adoption should that be considered in the child's best interests.

The chancellor's conclusion is also buttressed by the fact that the placement of Deborah was made pursuant to the Interstate Compact on the Placement of Children, legislatively enacted by both Texas and Maryland. *See* Md. Ann. Code, Art. 16 § 208 *et seq.* (1957, 1973 Repl. Vol., 1977 Cum. Supp.) and Tex. Rev. Civ. Stat. Ann. art. 695a-2 (Vernon, 1978 Supp.). Citizens of Maryland are, in our judgment, bound by the declared policy of the Compact and its provisions. No less is it an obligation of the courts of this jurisdiction to require that the provisions of the Compact be enforced and that the continuing jurisdiction of the "sending agency" be recognized, Md. Ann. Code, Art. 16 § 212A (a), *supra,* to the end that cooperation in the interstate placement of children may be achieved.

We are aware, as was the chancellor, of the "distress" to appellant and her young sons that may result from the court's action. Appellant is not, however, without fault, and although she may now, in the light of elapsed time and her care of Deborah, be the child's "psychological parent," [8] as the chancellor also recognized, we held subsequent to the proceedings below that this factor is not determinative. *Montgomery County Department of Social Services v. Sanders, supra.*

The finding of the lower court that the consent of the Dallas County Child Welfare Unit to Deborah's adoption by appellant was properly withheld is amply supported by the record.

> *Decree affirmed; appellant to pay the costs.*

8. J. Goldstein, A. Freud, A. Solnit, *Beyond the Best Interests of the Child* (1973).