ROBERT L. KEENEY *v.* PRINCE GEORGE'S COUNTY
DEPARTMENT OF SOCIAL SERVICES

[No. 124, September Term, 1979.]

*Decided October 18, 1979.*

The cause was submitted on briefs to GILBERT, C. J., and MOORE and MELVIN, JJ.

Submitted by *Alan J. Goldstein* and *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* for appellant.

Submitted by *Robert B. Ostrom, County Attorney for Prince George's County, Michael O. Connaughton, Deputy County Attorney,* and *Karel C. Petraitis, Associate County Attorney,* for appellee and *Donna C. Aldridge* for children.

GILBERT, C. J., delivered the opinion of the Court.

"If ever we are justified in reading a statute, not narrowly as through a keyhole, but in the broad light of the evils it aimed at and the good it hoped for, it is here." *United States ex rel Marcus v. Hess,* 317 U.S. 537, 557, 63 S.Ct. 379, 391, 87 L.Ed. 443, 456 (1943).

That Robert L. Keeney is and has been locked behind prison bars for the crime of assault with intent to maim, arising out of bizarre sexual conduct, has not prevented him from opposing Prince George's County Department of Social Services' (Department) attempt to obtain guardianship with the right to consent to the adoption and/or long-term care of Keeney's children. Keeney is of the belief that the State may not imprison him for a prolonged period on the one hand and on the other take his children from him because they have been "under continuous foster care for a period of two consecutive years," Md. Ann. Code art. 16, § 75(a), while he has been serving his term.

In the Circuit Court for Prince George's County, Keeney loosened a constitutional pincers movement against Art. 16, § 75(a). He argued that 1) the presumption of the statute, as applied, violated his right to due process of law, and 2) the denial to him of access to his children and *vice versa* violated the equal protection clause of the Fourteenth Amendment.

Judge Vincent J. Femia disagreed with Keeney and granted to the County Department of Social Services the relief that they sought, namely, the guardianship of Keeney's five children with the right vested in the county to consent to adoption and/or long-term care. Keeney's protestations did not end with the circuit court's decree.[1] He, *via* counsel, has journeyed to Annapolis, where he has repeated his assault on

---

1. Mrs. Keeney, appellant's wife and the mother of the children, also objected to the application by the County Department of Social Services for guardianship with the right to consent to adoption. The mother, who had been sentenced to imprisonment for her conduct arising out of the incident which led to Keeney's confinement, did not, however, join her husband in this appeal.

the constitutionality of Article 16, § 75(a). That section of the code provides:

> "After a child has been under continuous foster care for a period of two consecutive years under the custody of an agency authorized by law to make placements, *it shall be presumed by the court that it is in the best interests of the child* to award to that agency a decree granting guardianship with the right to consent to adoption or long term care short of adoption, without the consent of the natural parent or parents; provided that notice otherwise required by law has been given." (Emphasis supplied.)

The record is crystalline that Keeney's contact with his children abruptly ceased on November 9, 1975, when he was arrested on the charge for which he is now confined. Keeney testified that he had made no effort to communicate with his children since his arrest. He said he "was told . . . [he] could not contact them, write them or anything." Keeney identified his former attorney and a social worker as the parties who had so advised him. At Christmas time, inferentially of the same year, Keeney and his spouse "tried to give . . . gifts to them," but a "Mr. W. H. Tredwell, that was handling . . . [his] affairs at the time, got the gifts and was told that he could not give them or the children couldn't have them." The identity of the person or persons who supposedly forbade the giving of the gifts by the parents to the children was not revealed. Keeney said that he had not communicated with his children because he was advised by the proverbial, ambiguous and somewhat evasive, "They" that "it was best we not interfere. . . ." The children, as of the time of the trial of this matter, had not made contact with their father, and he never requested the Department of Social Services to allow him to see the children.

Keeney's testimony was not refuted. The appellee did not call as a witness the attorney who allegedly advised Keeney not to contact his, Keeney's, children.

The appellant argues "that the initial denial of permission to contact his children by the Appellee, without a hearing, violated his due process rights. Appellant had the right to be heard before his access rights to his children were cut off. This is especially true in light of Article 16, Section 75 in which access to the child is crucial in order to rebut the statutory presumption." We observe that appellant, by his own admission, made no effort to contact his children during his incarceration, did not request that they be allowed to visit him, nor did he inquire of anyone as to their health or welfare. Except for one effort in 1975 to send them Christmas presents, which effort was allegedly frustrated, appellant was seemingly content to allow the matter of his children to be left to others. It was not until appellant was advised of the Department's desire to seek guardianship for the purpose of consenting to adoption that his parental interests were re-stimulated. There is nothing within the record to indicate that appellant ever requested, much less had been denied, visitation with his children. We think appellant's argument with respect to a denial of visitation rights is utterly devoid of merit. In our view Judge Femia was not clearly erroneous in his factual determination that appellant was never denied access to the children.[2]

Appellant next asserts that, as applied, Art. 16, § 75(a) works an irrebuttable presumption that operates as a rule of substantive law which automatically deprives him of a protected liberty interest [3] without concomitantly providing him with an opportunity to mount a defense. He maintains due process requires a separate notice and hearing as a

---

**2.** Md. Rule 1086. *See* Davis v. Davis, 280 Md. 119, 372 A.2d 231, *cert. denied,* 434 U.S. 939, *reh. denied,* 434 U.S. 1025 (1970) (three distinct aspects of appellate review exist in custody cases). *Accord,* Montgomery County v. Sanders, 38 Md. App. 406, 418, 381 A.2d 1154, 1162 (1978); Christman v. O'Connor, 36 Md. App. 263, 270, 373 A.2d 326, 330 (1977). *See also* Bernhardt v. Lutheran Social Services, 39 Md. App. 334, 340-41, 385 A.2d 1197, 1200 (1978) (rule applies to adoption cases). *Accord,* Coffey v. Department of Social Services, 41 Md. App. 340, 346, 397 A.2d 233, 237-38 (1979).

**3.** *See* Coffey, *supra* at 357 where we quoted with approval from The Matter of Adoption of J.S.R., 374 A.2d 860 (D.C. 1977) that the Supreme Court had recognized that "[t]he right of a natural parent to raise one's child is a fundamental and essential one which is constitutionally protected. Stanley v. Illinois [405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)]."

prerequisite to the Department's use of Art. 16, § 75(a) else the statutory rebuttal opportunity afforded by Art. 16, §§ 75(b) and (c) is reduced to a sanctimonious saying *sine* substance. The trial court interpreted appellant's argument as a five step process, *viz:*

1) Art. 16, § 75(a), as applied, denies those without access, the fundamental right to raise children;

2) Art. 16, §§ 75(b) and (c) enumerate factors which may, if admitted into evidence, rebut the presumption of Art. 16, § 75(a);

3) The ability to achieve and adduce evidence of any of Art. 16, §§ 75(b) and (c) factors presupposes access to one's children;

4) Prior denial of access precludes the possibility of rebutting Art. 16, § 75(a), and thus effectuates an irrebuttable presumption,

5) against which the guardianship proceeding authorized by Art. 16, § 72 is insufficient due process protection.

Phrased another way, appellant avers that he is caught in a *Catch-22*[4] situation. He is, because of his confinement in a penal institution, denied access to his children, and at the same time the Department seeks to take custody of the children from him because he has not had access to the children.

There may be times when the application of Art. 16, § 75(a) would be manifestly unfair to an imprisoned parent. When that event appears likely, the chancellor is perfectly capable of separating the wheat from the chaff. Courts are not summarily going to provide for the termination of parental rights on the basis of a parent's being confined in a penal institution. If such confinement were the only reason that the Department of Social Services sought guardianship, we would strike down the decree on the ground that the chancellor did not properly consider or weigh the evidence in rebuttal of the legislatively created presumption. That a

---

4. A novel by Joseph Heller in which the principal characters are involved in a problem that has only wrong answers.

parent is involuntarily separated from a child, be it by imprisonment, hospitalization, military service, or other similar reason, does not indicate an abdication of parental responsibility, love, and affection.

The two-year continuous foster care creates a rebuttable presumption, not an absolute irrefutable fact. To be sure that the "presumption" was not treated as conclusive, the General Assembly spelled out in crystal clear language the factors that courts must consider whenever the presumption of Art. 16, § 75(a) is controverted.

Md. Ann. Code art. 16, §§ 75(b) and (c) respectively provide:

"(b) The court in considering evidence to rebut this presumption, among other factors, shall consider the following:

(1) The interaction and interrelationship of the child with his natural and foster parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(2) The child's adjustment to his home, school, and community; and

(3) The mental and physical health of all individuals referred to in subparagraph (1).

(c) Additionally, in order to rebut the presumption, the court *shall require* substantial proof that:

(1) The natural parent will be able to resume his or her parental duties within a reasonable period of time; or

(2) The natural parent has played a constructive role in the child's welfare during the time he has been in foster care.

In evaluating the parent's role, the court may consider, among other factors, (1) the frequency and regularity of personal contact with the child, (2) demonstrated love and affection, (3) parental

arrangement for the child's future education and financial support, both in relation to the parent's means." (Emphasis supplied.)

Thus, the statute, by its very terms provides an opportunity to rebut the legislatively created presumption. We agree with the trial judge that (1) access to the appellant's children was not denied the appellant, and more importantly, that (2) access is not absolutely required to muster an evidentiary rebuttal. Judge Femia stated:

'Even without access to one's children there still exists a fair opportunity to rebut the presumption. Article 16, § 75 provides in part:

"In evaluating the parent's role, the court may consider, among other factors, (1) the frequency and regularity of personal contact with the child, (2) demonstrated love and affection, (3) parental arrangement for the child's future education and financial support, both in relation to the parent's means.'

As the Department of Social Services points out in its memorandum, a parent so situated can still write and send small gifts so as to demonstrate love and affection. He could contact the Department of Social Services in order to make arrangements for the child's future education and his financial support. Considering the circumstances, such a showing could possibly rebut the presumption."

The safeguards of sections 75 (b) and (c) were not beyond the reach of appellant. The fact of his imprisonment or that he voluntarily chose for a period of two years to heed anonymous advice to avoid his children does not render the "presumption" constitutionally defective.

Aside from the appellant's testimony that he attempted to send gifts on one occasion to his children, there was no evidence adduced by the appellant which would serve to rebut the presumption created by Md. Ann. Code art. 16, § 75(a).

The effect of Art. 16, § 75(a) is to shift the burden of proof on the issue of what is in the best interest of the child or children to the natural parents in those cases where there have been two continuous years of foster care. *Hicks v. Prince George's County Department of Social Services,* 281 Md. 93, 375 A.2d 558 (1977). *See also Purifoy v. Mercantile Safe Deposit & Trust Co.,* 398 F. Supp. 1082 (D.C. Md.), *aff'd,* 567 F.2d 268 (4th Cir. 1977).

In civil proceedings, unlike those of a criminal nature, it is permissible to allocate to either party the burden of ultimate persuasion as well as the burden of producing evidence. *Plummer v. Waskey,* 34 Md. App. 470, 485-86, 368 A.2d 478, 487, *cert. denied,* 280 Md. 734 (1977); McCormick, *Handbook on the Law of Evidence,* § 344, 818-19 (2d ed. 1972).

The decision to forward significant social policy goals led the Legislature, in 1973, to create an exception, in foster care cases, to the general rule of the necessity for parental consent to adoption or custody,[5] and simultaneously to create a presumption that two years of continuous foster care means that agency guardianship is in the best interest of the child. *Hicks v. Prince George's County Department of Social Services, supra.*

In an analogically similar situation the Supreme Court upheld the use of a statutory presumption in a civil proceeding despite claims it denied due process of law. The Court said, "Legislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government." *Mobile, Jackson and Kansas City Railroad v. Turnipseed,* 219 U.S. 35, 42, 31 S.Ct. 136, 137, 55 L.Ed. 78, 80 (1910).

The rule used in testing a statutorily created evidentiary presumption of a fact from a proven fact in order to ascertain

---

5. Notwithstanding the general rule, the Court of Appeals, in Lagumis v. Ex Parte Lagumis, 186 Md. 97, 106, 46 A.2d 189, 193 (1946), said, "We should not read into that statute an absolute, arbitrary veto on the part of a parent." *Accord,* Nutwell v. Prince George's Co. Dept. of Social Services, 21 Md. App. 100, 106, 318 A.2d 563, 566 (1974), and *see* Beltran v. Heim, 248 Md. 397, 401, 236 A.2d 723, 725 (1968).

the presence *vel non* of due process has been stated in *Turnipseed, supra* at 43. There the Supreme Court said:

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed.

If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him."

The statute under attack, Md. Ann. Code art. 16, § 75(a), does not deny due process or equal protection of the law to the appellant. The presumption created by section 75(a) serves only to supply an inference of abandonment of parental responsibility, custody and care, absent other evidence contradicting the statutory inference. *Mobile, Jackson and Kansas City Railroad v. Turnipseed, supra.*[6]

Examination of the inferred fact (the presumption) and the known fact (two continuous years of foster care) through the *Turnipseed* lens led the trial judge to state that:

"[R]ecognized psychological authorities have found a definite correlation between a stable environment and the mental well-being of the child. In Goldstein,

---

6. *See also* Leary v. United States, 395 U.S. 6, 32 *et seq.,* 89 S.Ct. 1532, 1546-48, 23 L.Ed.2d 57, 79-82 (1969); Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519, 1524 (1943) (statutory presumptions in criminal proceedings).

Freed and Salnit, *Beyond the Best Interest of the Child* (1973) the authors emphasize the child's need for continuity of relationships, surroundings, and environmental influence in order to maximize his normal development.[7] ... The court believes that the substantial pyschological data supporting the theory that proper psychological development requires continuity in the child's external environment provides a rational basis for section 75 ... [and] that there is a valid rational connection between the fact proved and the ultimate fact preserved."

We think that Md. Ann. Code art. 16, § 75(a), as applied to the appellant, satiates the Due Process Clause of the Fourteenth Amendment, and that there is no equal protection violation lurking in the statute, or as it is applied. The appellant, however, alleges that, as a class, prisoners are without access to their children and are, therefore, automatically excluded from rebutting the presumptions that have been given life by the statute, while other persons similarly situated with access are not precluded from rebutting the statutory presumption. One fallacy with appellant's approach to an analysis of the problem is that he, by virtue of confinement in a penal environment, presupposes an involuntary lack of access to his children. We have seen that in appellant's particular case the failure of access was of his own doing, even if based on erroneous information supplied by an anonymous and ill-informed adviser.

Furthermore, the appellant overlooks that access is not required in order to rebut satisfactorily the presumption created in section 75(a).

We are not convinced that section 75(a) is in any way constitutionally imperfect. On the contrary, Md. Ann. Code art. 16, § 75 seems to us to represent a thoughtful and

---

7. We made it unmistakably clear in Montgomery County v. Sanders, *supra*, that the psychological parent concept advanced in *Beyond the Best Interest of the Child* is not a panacea and is but one of many factors to be weighed and sifted in determining awards in custody cases.

698

carefully considered social policy directed toward the well-being of the child-citizen of this State.

> *Decree affirmed.*
> *Costs to be paid by appellant.*